(16 Misc. Rep. 323.)

### ROWE v. BROOKLYN LIFE INS. CO.

(Supreme Court, Trial Term, Pulaski County.   March 30, 1896.)

1. LIFE INSURANCE—NONPAYMENT OF PREMIUM—NOTICE TO ASSURED.

Where a contract of life insurance is made with the beneficiary to whom the policy is delivered, and to whom, or to whose personal representatives, it is payable, and the person whose life is insured has no interest in the policy, and the beneficiary is designated as the person who must pay the premiums; such beneficiary is the person "assured," within Laws 1876, c. 341, § 2, providing for proof of service of notice to "the assured," and Laws 1877, c. 321, § 2, providing for the service of notice on "the person whose life is assured."

2. SAME—AGENCY—HUSBAND AND WIFE.

Where a wife insures her husband's life for her own benefit, there is no inference from the relationship that the husband was the wife's agent to receive notice of nonpayment of the premiums.   Schneider v. Insurance Co., 25 N. E. 321, 123 N. Y. 109, distinguished.

3. SAME—WAIVER OF FORFEITURE.

On the day after a life insurance policy was alleged to have lapsed for nonpayment of premiums, the person insured wrote to the company, asking for "figures for a paid-up policy, free from all liens or claims," and "a detailed statement of the condition of my policy." Two days later the president wrote him that the equity of his policy was represented by the amount of his liens, and there would be no paid-up policy, free of liens, but he did not claim that the policy had lapsed. *Held*, that such letter was an admission that the policy was in force at the time of the alleged lapse.

Action by Sophia L. Rowe against the Brooklyn Life Insurance Company on a life insurance policy.   There was a trial before the court, a jury having been waived.   Judgment for plaintiff.

L. C. Rowe, for plaintiff.

William H. Ford, for defendant.

WRIGHT, J.   The defendant on December 23, 1865, upon the application of the plaintiff, issued and delivered to her a policy upon the life of her husband, the late Nathan M. Rowe, Esq., of Oswego, N. Y., who died August 29, 1893.   By the terms of the policy, the defendant—

"In consideration of the representations and agreements contained in the application therefor, and of $67.50 to them in hand paid by Sophia L. Rowe, wife of Nathan M. Rowe, and of the annual premium of $67.50, to be paid, * * * do assure the life of Nathan M. Rowe in the amount of $2,000, * * * and do hereby promise and agree with the said Sophia L. Rowe well and truly to pay to her the said sum assured, for her sole use, or, in case she shall die before the said Nathan M. Rowe, to pay the said sum assured to her heirs, executors, administrators, or assigns, within sixty days after due notice and proof of the death of said Nathan M. Rowe; the balance of the year's premium, if any, and all indebtedness due or to become due the company, to be first deducted therefrom. * * * This policy * * * is granted by this company, and accepted by the said Sophia L. Rowe, upon the express conditions that * * * in case the said Sophia L. Rowe shall not pay, or cause to be paid, the premiums, * * * or any note given * * * in payment of any premium, on the day or days when the same shall become due, except the note given for half the annual premium, * * * or shall not renew such last-mentioned note when the same shall become payable, and pay the interest or discount thereon, * * * this policy shall cease and be null and void. * * * And it is further agreed * * * that the dividends of profits, if

any, which may become payable, by virtue of this policy, to the holder thereof, shall be applied towards the payment of the note taken for half premiums aforesaid, and that, if this policy shall cease or become null and void, * * * Sophia L. Rowe, her heirs, executors or assigns, shall be liable to pay to said company the amount of all notes taken for premium which shall remain unpaid, except the balance remaining unpaid on the note taken for half premiums."

The defense is that the policy, by the volition of the beneficiary, became lapsed in 1883. The president of the defendant, by a letter to the plaintiff's attorney, dated December 15, 1895, wrote:

"The insured and assured voluntarily lapsed the policy in 1883. The policy became null and void, and of no value whatever, in 1893; and that, too, by the volition of the beneficiary."

This letter was introduced by the plaintiff as an admission, for the purpose of showing that the policy was in force after chapter 341 of the Laws of 1876, as amended by chapter 321 of the Laws of 1877, went into effect; and it does show that fact. Therefore the policy is to be read as if those statutes were literally incorporated into it; and as said in De Frece v. Insurance Co., 136 N. Y. 144, 32 N. E. 556:

"The plaintiff was not bound to allege or prove the payment of the annual premiums when due. * * * There could be no forfeiture for this cause unless the defendant alleged and proved nonpayment after the due service of the notice required by law."

Said statute requires that the notice respecting the premium or interest due, or to become due, shall be "addressed and mailed to the person whose life is assured." On December 23, 1883, a premium became due. It appears that 30 days prior thereto, and within the statutory period, the defendant mailed Nathan M. Rowe a notice stating that $56.63 would be due on said policy on December 23, 1883. No premiums were paid thereafter, and the defendant claims that the policy consequently lapsed. The plaintiff urges that the notice, to have any statutory force, should have been mailed to her. At the time in question, December 23, 1883, there were two statutes in force regulating the method of proof of the service of the notice,—one, being section 2 of chapter 341 of the Laws of 1876, which provided, "The affidavit of any officer * * * that the notice to the assured * * * has been duly addressed and mailed by the company issuing such policy to the assured, shall be presumptive evidence," etc.; the other (section 2 of chapter 321 of the Laws of 1877) provided for the making of the affidavit of service by persons other than those mentioned in the foregoing section, and that the notice should be "duly addressed to the person whose life is assured." The defendant claims that Mr. Rowe was "the person whose life is assured" by the policy. In solving this ambiguity of the statutes cited, we must endeavor to ascertain the legislative intent. "And where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act, and carry out the purpose of the statute." Black, Interp. Laws, 56. "The purpose of the act is to require the insurers to give the notice, so that the

policy holder may not lose the benefit of the policy by forgetfulness or misapprehension as to the time of the stated payments." Merriman v. Association, 138 N. Y. 123, 33 N. E. 738. "The act should be construed according to the popular signification of the language used, and with a view to secure to policy holders in life insurance companies the benefit contemplated by legislation." Carter v. Insurance Co., 110 N. Y. 15, 17 N. E. 396. "It [this act in question] was intended to, and undoubtedly does, subserve a useful purpose, in throwing about the contract between the insurer and insured a reasonable safeguard against the forfeiture or lapsing of the interest of the assured." McDougall v. Society, 135 N. Y. 555, 32 N. E. 251. In Brockway v. Insurance Co., 29 Fed. 766, it is held that the term "assured" referred to the one on whose application the policy was issued, who was the beneficiary and paid the premiums. In Ferdon v. Canfield, 104 N. Y. 143, 10 N. E. 146, Judge Rapallo says:

"Although the life of Canfield was the life insured by the policy, he was not the party assured thereby. His life was the subject of the insurance, but the contract does not, on its face, purport to have been made either with him, or for his benefit."

Again, the statute of 1877 provides that in case of an assignment of the policy, and notice of the assignment is given to the company, the notice must be served on the assignee. Did the legislature intend to invest the assignee of the beneficiary with greater rights and ampler protection than the assignor possessed? In Classey v. Insurance Co., 84 Hun, 350, 32 N. Y. Supp. 335, on an objection that the plaintiff had no insurable interest in the life of the person insured, the court says:

"One may insure his own life, and the policy, when issued, will be valid in the hands of the assignee. In case at bar the person insured made the application, and caused the policy to be issued in favor of the plaintiff. In legal effect, that was the same as if issued to the person whose life was insured, and by her assigned."

In the light of the above authorities, was the object of the statute subserved by the service of the notice on Mr. Rowe, who was not a party to the contract; who had no interest therein,—present, future, or contingent; to whom the policy was not issued or delivered, and who was not the holder thereof; who was under no liability for any indebtedness thereon; and who, under the authorities, was clearly not the person assured? Again, in case Mrs. Rowe had died during the lifetime of Mr. Rowe, and the company had been informed of the appointment of her executors or administrators, would the object of the statute then have been subserved by the service of the notice on Mr. Rowe? Under the statutes, and the authorities construing the legislative intent, it must be held, where the contract is made with the beneficiary, to whom the policy is delivered, and to whom it is payable during her life, and after her death to her executors or administrators, and where the person on whose life the policy risk is taken has no interest—present, future, or contingent—therein, and where the beneficiary is designated in

the policy as the person who must pay the premiums, and is therein obligated to pay all outstanding indebtedness in case the policy shall lapse, and whose default forfeits the policy, that at the time in question, December 23, 1883, in order to effect a forfeiture of the policy, it was necessary to be, shown, in the language of section 2 of chapter 341 of the Laws of 1876, "that the notice to the assured has been duly addressed and' mailed by the company issuing such policy to the assured," and that in this case the person "assured," and to whom the policy was issued, was the plaintiff, and that she, in this case, also answers the description of the "person whose life is assured," in the act of 1877.

The learned counsel for the defendant urges that Mr. Rowe must be regarded as the agent of his wife for the purpose of receiving notice. But there was no competent proof to sustain that contention, and such agency will not be inferred solely from the relationship of husband and wife. · The Schneider Case, 123 N. Y. 109, 25 N. E. 321, holding that the husband was the agent of his wife, for the purpose of receiving the statutory notice, does not sustain the defendant's position in this case; for in that case the husband made the application, received the policy, retained it in his possession, paid the premiums, and the wife had no knowledge of its existence until his death. The court said:

"The plaintiff cannot claim the benefit of a contract made in her behalf,, but, as it appears, without her knowledge, without at the same time assuming all the responsibility of a failure to perform its essential conditions."

It is not shown by any competent evidence that Mr. Rowe ever paid a premium, or took any action respecting the policy, further than the writing of a few letters inquiring the value of the policy in exchange for a paid-up policy, and, so far as it appears, the notice in question is the only notice for the payment of a premium the defendant ever served upon him; and the presumption is that the plaintiff paid every premium that was paid. Certainly, under such circumstances, it cannot be held that Mr. Rowe was the plaintiff's agent for the purpose of receiving the notice.

There is also involved in this case an interesting question of waiver. On December 24, 1883, the day after the date on which the defendant now urges that the policy lapsed for the nonpayment of premiums, Mr. Rowe, wrote the company with reference to this policy, asking "figures for a paid-up policy, free from all liens or claims," and "a detailed statement of the condition of my policy." On December 26, 1883, three days after the forfeiture date as now claimed by the defendant, the president of the company, in answer to Mr. Rowe's letter of the 24th, wrote him, stating:

"The equity, if we may so term it, of your policy, if surrendered, is represented in the amount of your liens, and there would be no paid-up policy, free of liens."

The letter contains no claim or suggestion that the policy was lapsed, but, on the contrary, states, in substance, that the policy at that time had a value, and that, if surrendered, the value was the amount of liens against it, which, in the former letter to Mr. Rowe

from the president, dated December 22, 1883, was stated at $381.46, conditioned on the payment of annual interest thereon. This letter is wholly inconsistent with the theory that the policy was lapsed or forfeited up to December 26, 1883, but is a full and complete certificate of its legal existence at that time. "It may be asserted, broadly, that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it [the insurance company] recognizes the continued validity of the policy, or does acts based thereon, the forfeiture is, as a matter of law, waived; and it is now settled by this court, after some difference of opinion, that such waiver need not be based upon any new agreement or an estoppel." Titus v. Insurance Co., 81 N. Y. 419. It cannot be claimed that the president had in view the surrender value which now exists after a lapse under section 1, c. 347, Laws 1879, because the policy was issued prior to that enactment. Therefore, if it should be conceded to the defendant that either of its positions is correct; that Mr. Rowe was the proper person to be served with the notice under the statutory designation, or that he was the plaintiff's agent for receiving such notice,—then the defendant falls into the other alternative of the dilemma, of having waived the force and effect of that service by its correspondence with Mr. Rowe, recognizing the validity of the policy. Again, the notice did not state the correct amount due on the policy, but stated a considerably larger amount than was due. The policy could not be forfeited by the nonpayment of such excessive amount, and the notice was not, therefore, the statutory notice. And the defect was not waived by Mr. Rowe's neglect to call attention to it in the correspondence above mentioned, because the benefit of a statute which, in pursuance of a general policy, requires notice of the accruing premiums on life insurance policies to be given to the assured, cannot be waived. Phinney v. Insurance Co., 67 Fed. 493.

The remaining question is, how much is due on the policy? It provides that all indebtedness shall be deducted therefrom. There is no competent evidence of any indebtedness arising until the year 1875, when Jenkins, the cashier of the defendant, speaking from personal knowledge, states that from that year until December 23, 1882, inclusive, only one-half the annual premiums, besides interest moneys hereafter mentioned, were received at the home office. The plaintiff had, during those years, paid certain sums on the premiums to the agent of the company at Oswego, who forwarded them to the home office. The cashier states that after December 23, 1882, no premiums whatever were received at the home office. That evidence is sufficient to throw the burden upon the plaintiff to show that she paid those premiums, either at home office, or to the local agent authorized to receive them. This not being shown, it must be held that the plaintiff is indebted to the company for the amount of the unpaid half premiums which became due each year from December 23, 1875, until December 23, 1882, inclusive, less the dividends declared each year, and also less the amount of all other moneys received on said policy. Certain sums were received at

the home office from the agent Harmon at Oswego, which the cashier, in his testimony, characterizes as interest; but no authority is shown to have been given by the plaintiff, or even by Mr. Rowe, to the agent, to pay any money as interest to the company. And, there being no competent evidence of the existence of any indebtedness to the company prior to the year 1875, consequently all those sums thus designated, commencing with that year, and continuing each year until December 23, 1882, inclusive, must be credited to Mrs. Rowe on her indebtedness for the half annual premiums left unpaid. The plaintiff is also indebted to the company for the amount of the whole premiums which became due each year since December 23, 1883, until December 23, 1892, inclusive, less the dividends which would have accrued each year, as shown by the defendant's expert testimony, had the premiums been paid when due. The plaintiff is therefore entitled to judgment against the defendant for $2,000 and interest up to the date of the entry of judgment, less said indebtedness, with interest to the same date on each of the aforesaid yearly balances of said indebtedness, to be struck as above directed, with costs. Findings may be prepared accordingly.