**444**                    **SUFFOLK.**

Royal Bank of Liverpool *v.* Grand Junction Railroad & Depot Company.

ROYAL BANK OF LIVERPOOL *vs.* GRAND JUNCTION RAILROAD
& DEPOT COMPANY.

An impression of the seal of a corporation, indented, without any intervening substance,
upon the surface of a printed bond, otherwise valid as a corporate obligation, and pur-
porting to bear the corporate seal by the corporation affixed; which was so impressed
by the printer, by direction of the officers of the corporation, after the bond was printed,
and in order to prepare it to be signed and issued; renders the bond valid as an obligation
under seal.

In an action, by the holder, on overdue and unpaid obligations, issued by the defendant cor-
poration under its seal, and expressed to be payable to the holder, the fact that the corpo-
ration delivered to the plaintiff part of them as collateral security for the payment of the
residue is no defence.

CONTRACT on forty-eight overdue and unpaid bonds of the
defendants, a corporation under the law of Massachusetts, one
half of which bonds bore numbers less than 200, and the other
half numbers above 300, each bond being dated January 1, 1850,
acknowledging the debt of the corporation in the sum of four
hundred and eighty dollars, money of the United States, or one
hundred pounds sterling, money of Great Britain, and promising
to pay the same in dollars or pounds sterling, to the holder of
the bond on July 1, 1855.   Each bond bore an impression of
the seal of the corporation upon the paper so as to indent its
surface, without any intervening substance ; was expressed that
" the company has hereunto affixed its corporate seal ; " and was
signed by the president and treasurer.   The answer set up that
the bonds were not under seal, and were barred by the statute
of limitations.

At the trial, before *Hoar*, J., " the defendants asked permis-
sion to amend the answer, by adding thereto the assertion that
the bonds numbered above 300 had been delivered to the plain-
tiffs as additional security for the payment of the bonds num-
bered below 200.   The judge refused to permit the amendment
to be filed, on the ground that it was immaterial, and reserved
that question.   Upon the evidence offered at the trial, the judge
ruled that, if the impression appearing on each of the bonds
was made from the corporate seal of the defendant company

upon the paper, after the bonds were printed, and made by the printer to whom the seal had been sent by the officers of the company, for the purpose of making the impression, in order to prepare the bonds to be signed and issued as the bonds of the company, and, having been so impressed, the bonds were afterwards signed by the proper officers, and delivered as the bonds of the company, they were obligations under the seal of the company, not barred by the statute of limitations. Under this ruling, a verdict was taken for the plaintiff for four hundred and eighty dollars and interest from July 1, 1855, on each bond, and the case was reserved for the consideration of the whole court."

*B. Dean*, for the defendants.

*H. W. Muzzey*, for the plaintiffs.

FOSTER, J. That the bonds declared upon were sealed instruments was settled by *Hendee* v. *Pinkerton*, 14 Allen, 381.

The corporate seal having been affixed by the printer, by the direction of the officers of the corporation; and they having adopted his act, and subsequently signed and issued the bonds; the sealing was duly made, and the instruments became obligatory upon the corporation. This is no more nor less than constantly takes place when a scrivener prepares and affixes a seal to a deed which the grantor thereupon signs and delivers. The practice is of unquestionable validity, and the authorities for it are abundant. " If a stranger seal an instrument by the allowance, or the commandment precedent, or agreement subsequent, of the person who is to seal it, that is sufficient." Cruise Dig. tit. 32, *c.* 2, § 55.

The allowance of the proposed amendment to the defendants' answer would have been unavailing. A sealed instrument conclusively imports a consideration. And these bonds, having been duly executed and delivered, the holders could have maintained an action upon them, if their delivery had been merely gratuitous, and no value had ever been given for them. A delivery of a portion, as collateral security for the payment of the residue, is sufficient. If the defendants wish to avail themselves of the fact that a part were held only as collateral security for the rest, they cannot do so until they have paid in full the

amount of their real indebtedness. Until such payment is tendered, there is apparently no equity in their favor, and certainly no defence to a common law action upon all the securities which they have issued. *Judgment on the verdict.*