MARY B. DE FREECE, as Administratrix, etc., Respondent, *v.* NATIONAL LIFE INSURANCE COMPANY, Appellant.

Defendant insured the life of De F., plaintiff's intestate, upon what is known as "the installment bond plan," the premium to be paid in twenty annual installments, and the bond to be forfeited in case of non-payment at the date specified. In an action upon the bond defendant alleged in its answer a subsequent agreement that the installments should be paid quarterly instead of annually ; and that the bond was forfeited by reason of the failure of the deceased to pay a quarterly payment which fell due twenty-three days before his death. The only proof as to the alleged new agreement was evidence showing that from October 27, 1883, to October 27, 1888, inclusive, the insured paid the premiums quarterly, that they had been received and accepted by defendant and receipts given reciting that they were for premiums falling due quarterly. This evidence, however, showed that all of these payments, except three which were made by note, were made at intervals from twenty days to five months after they became due. *Held,* that while the evidence was sufficient to show a modification of the original agreement with respect to time of payment, it also established an agreement on the part of defendant to receive payments after they became due, if made within a reasonable time, and so that no forfeiture was established.

(Argued October 27, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This was an action upon three installment life insurance bonds issued by defendant to Benjamin De Frece, plaintiff's intestate.

The facts, so far as material, are stated in the opinion.

*I. Newton Williams* for appellant. The premium notice mailed to the insured under the laws of New York (Chap. 341, Laws of 1876, as amended), requiring life insurance companies doing business in this state to mail notices to insured at least thirty days before the premium falls due, before the company can declare the policy lapsed and forfeited, was sufficient, and that law fully complied with. (Laws of 1876,

chap. 341; Laws of 1877, chap. 321.)   The insured was bound
to know the laws of New York state; the court will presume
that he knew the laws of the state of his domicile and residence
The law presuming the assured to know this law will also
presume that having the notice in his possession, holding it —
it being produced on the trial by plaintiff — knew what it
contained   (Laws of 1876, chap, 341; *Kettlewell* v. *Watson*,
L. R. [21 Ch. Div.] 704; *Ware* v *Egmont*, 4 De G., M. &
G., 460, 473; *Heathorn* v. *Darling*, 1 M. P. C. 5; *Brydges*
v *Chandos*, 2 Ves., Jr., 437, 440; *Peto* v. *Hammond*, 30
Beav 495, 509; *Brumfit* v. *Morton*, 3 Jur. [N. S.] 1198,
1202; *Patterson* v. *Long*, 6 Beav. 590, 597; *Whitlock* v.
*Johnson*, 15 Va L. J. 73.)   When policies are assigned to
company, no notice is required to be mailed, as defendant
knew this premium would fall due on January twenty-seven,
and even, if necessary, it could waive this provision of stat-
ute for its benefit.   (Laws of 1876, chap. 341; *Pfyfe* v.
*Emier*, 45 N. Y 102, 104; *Embury* v. *Connor*, 3 id 50;
*Kneetle* v *Newcomb*, 22 id 249, 252.)   The point, that the
policy did not lapse until the expiration of thirty days after
the date the premium became due, and the thirty days had
not expired when the insured died, is untenable.   (Laws of
1876, chap 341; Laws of 1877, chap. 321.)   The court erred
in allowing evidence tending to excuse the payment of pre-
mium.   (*Tooker* v. *Arnoux*, 76 N. Y. 397; *Oakley* v. *Men-
ton*, 11 id. 25; *Worall* v. *Parmalee*, 1 id. 519; *Anderson* v.
*R. & W. R. R. Co.*, 54 id. 334; *Osgood* v. *M. Co.*, 3 Cow.
612; *Baird* v. *Gillett*, 47 N. Y. 186; *Brown* v. *S. R. R.
Co.*, 18 id. 495; *S. Bank* v. *Garlinghouse*, 4 How. Pr. 174;
*Burrall* v *Moore*, 5 Duer, 654; *Kanouse* v. *Martin*, 3 Sandf.
593; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Rider* v. *Powell*, 28
id 310; *Wood* v. *Hubbell*, 10 id. 479.)   The plaintiff claims
that there has been a waiver of forfeiture by the defendant
by accepting the October 27, 1888, premium three days after
the January premium of 1889 was due, for the nonpayment
of which premium the bonds were forfeited.   This testimony
was admitted under defendant's objection and exception; the

question of waiver was not presented by the issues framed by pleadings, and, therefore, plaintiff was not entitled to have that question submitted to jury or decided by the court, and the exceptions are well taken. (Code Civ. Pro. §§ 514–518; *Romain* v. *Sickles*, 108 N. Y. 650; *Kelly* v. *Upton*, 5 Duer, 336, 342; *Schultz* v. *Dupuy*, 3 Abb. Pr. 252; *Garvey* v. *Fowler*, 4 Sandf. 665; *McKyring* v. *Bull*, 16 N. Y. 297, 304; *Weaver* v. *Barden*, 49 id. 286; *Tooker* v. *Arnoux*, 76 id. 397.) There has been no waiver of forfeiture proven, even if the evidence was competent. (*Thompson* v. *Ins. Co.*, 104 U. S. 360; *Lantz* v. *V. L. Ins. Co.*, 139 Penn. St. 546, 557, 565; *Bergman* v. *St. L. Co.*, 2 Mo. App. 262; *N. M. L. Ins. Co.*, v. *Miller*, 85 Ky. 88; *Ill. Mas. Soc.* v. *Baldwin*, 86 Ill. 479, 487; *Home Co.* v. *Pierce*, 75 id. 426; *Howell* v. *K. L. Ins. Co.*, 44 N. Y. 276.) The bonds in suit contained a provision that agents cannot give credit or make or alter or discharge contracts or waive forfeitures, and that no alteration of the conditions of the bond was valid unless made in writing at the home office and signed by the president; under these circumstances the general agent had no power or authority to waive a forfeiture, or extend time for payment of premium, and if insurer failed to pay in time he did it at his peril. (*Marvin* v. *Ins. Co.*, 85 N. Y. 282; *Walsh* v. *H. F. Ins. Co.*, 73 id. 5; *Peckner* v. *P. Ins. Co.*, 65 id. 207.)

*B. F. Einstein* for respondent. The defendant waived the prompt payment of the premium which became due on January 27, 1889, and gave to Mr. De Frece at least a reasonable time thereafter to pay same, which time had not expired when he died. (*Bodine* v. *E. F. Ins. Co.*, 51 N. Y. 117; *Baxter* v. *B. L. Ins. Co.*, 119 id. 450.) The defendant, by its course of dealing with Mr. De Frece, in accepting payment of premiums long after they become due under the terms of the policies, led him to believe that prompt payment of the premium was unnecessary, and that the same might be paid within a reasonable time after they became payable, without forfeiture of the policies, and he having died on February 19,

1889, leaving unpaid the premium payable January 27, 1889, the defendant is estopped from claiming a forfeiture of the policies. (*Leslie* v. *K. L. Ins. Co.*, 63 N. Y. 34; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 id. 247; *Meyer* v. *K. L. Ins. Co.*, 73 id. 516; *Atty.-Gen.* v. *C. L. Ins. Co.*, 33 Hun, 141; *Wyman* v. *P. L. M. Ins. Co.*, 119 N. Y. 274; *Ins. Co.* v. *Eggleston*, 96 U. S. 577; *Ins. Co.* v. *Wolf*, 95 id. 333; *Ins. Co.* v. *Doster*, 106 id. 37; *Helme* v. *P. L. Ins. Co.*, 161 Penn. 107; *Goedecke* v. *M. Ins. Co.*, 30 Mo. 608.) The notice sent by the defendant to Mr. De Frece between December 1 and 10, 1888, was insufficient under section 1 of chapter 321 of the Laws of 1887. (*Phelan* v. *N. M. L. Ins. Co.*, 113 N. Y. 147.) Each party having asked the court, upon the conclusion of the evidence, to direct a verdict in his favor, and the court having directed a verdict for the plaintiff, all the controverted facts and all inferable facts in support of the judgment will be deemed conclusively established in favor of the plaintiff. (*Thompson* v. *Simpson*, 128 N. Y. 270, 283, 284; *Koehler* v. *Adler*, 78 id. 287.)

MAYNARD, J. The defendant, a life insurance company incorporated under the laws of Vermont, insured the plaintiff's intestate upon what is known as the installment bond plan. The contract on its part consisted of a promise to pay the insured one thousand dollars at the expiration of twenty years from the date of the instrument, or, if he died before that time, to pay a like sum to his assigns within ninety days after satisfactory proof of death, deducting all indebtedness of the parties in interest to the company incurred on account of the bond, with the residue, if any, of the year's installment. The policy then states that it is issued by the company and accepted by the insured and beneficiary upon certain conditions, one of which is: "That the National Life Insurance Co. issue this bond in consideration of an installment of sixty-three dollars and seventy-four cents to it this day paid by the insured, and the agreement that a like sum shall be punctually paid to it on or before the twenty-seventh day of

October in every year, until twenty annual installments shall have been paid or until his decease." Another condition stated is: "In case any installment upon the bond, or any part thereof, or any note given therefor, shall not be paid, when payable, the bond shall thereupon become forfeited and void, except after two full annual installments shall have been paid on it, in which case the company hereby binds itself to pay, for a full surrender of same, the sum stated in the margin, which shall correspond with the number of installments paid, as its cash value with the surplus, if any, which may then have accrued."

A statement of the guaranteed cash value of the bond for each year after the expiration of two years is then given.

There were three such bonds cotemporaneously issued. The complaint alleged the making of the promise in consideration of the payment by the insured of sixty-three dollars and seventy-four cents and an agreement that a like sum should be paid to it annually during the twenty years, or until the death of the insured, and that the insured had complied with the terms of the agreement so far as the same were to be complied with by him. The answer admitted the execution of the bond, but denied that the insured had complied with its terms. It also set up a subsequent agreement with him by which the installments were to be paid quarterly instead of annually, and that the last quarterly installment, which fell due twenty-three days before his death had not been paid and that the company more than thirty and less than sixty days before it became due served the notice required by chapter 341 of the Laws of 1876 as amended in 1877 (Chap. 321) and the bond had thereby become forfeited and void. It also set up a counterclaim for the amount of an unpaid promissory note given by the insured to the company.

The plaintiff first replied to the counterclaim. Subsequently she replied to the other new matter in the answer, simply denying any knowledge or information sufficient to form a belief in regard thereto. The cause was tried before a jury and the plaintiff rested upon the pleadings and gave no evi-

dence.   The defendant then, without moving for a dismissal of the complaint, or a direction of a verdict, assumed the affirmative and gave evidence tending to show that two years after the execution of the bond it was agreed between the insured and the company that the installments of premium should be paid quarterly instead of annually, and proof of the service of a notice, claimed to be in conformity to the act of 1876, and of the nonpayment of the last quarterly installment.

It is evident that if the defendant relied upon the literal terms of the bond it had no defense to the action.   The agreement of the insured was to pay sixty-three dollars and seventy-four cents annually on the twenty-seventh day of October, and under the law of this state a failure to make such payment would not work a forfeiture of the policy, unless the defendant, more than thirty and less than sixty days prior thereto, served upon the insured a notice that if that sum was not paid on or before that day the policy would become lapsed and forfeited.   The notice which was served did not state the amount specified in the policy, but a smaller sum which was subsequently paid to and accepted by the company, and the defendant does not rely upon any default occurring on October twenty-seventh, but upon one, which is alleged to have occurred on the twenty-seventh day of January following, and previous to which it is claimed the statutory notice was duly served.   There is nothing in the agreement requiring any payment to be made on the latter date, and the defendant sought to establish the making of a new and supplemental agreement in regard to the payment of premiums, by which it was stipulated that they should be made quarterly instead of annually as prescribed in the policy. There was no proof upon this point except the fact that from October 27, 1883, to October 27, 1888, inclusive, the insured had paid the premiums quarterly, and they had been received and accepted by the defendant and receipts given which recited that they were for premiums falling due quarterly and not annually.   Without question, this evidence was sufficient to establish a modification of the original agreement of the

parties with respect to the time of payment, and had it not been qualified or restricted, would have authorized the service of a notice requiring payment to be made on January 27, 1889, which if not complied with would have resulted in a forfeiture of the policy.

But the same evidence established another fact of great importance to the rights of the insured, and that was that the company had also agreed with him that they would receive payment of the installments after they became due if payment was made in a reasonable time thereafter, and would waive the right given them by the policy to declare it forfeited, if punctual payment was not made. We do not think the evidence given by the defendants' witnesses is susceptible of any other reasonable inference. Of the twenty-one payments to which it related, all were made after they became due, and at intervals of time varying from twenty days to five months, excepting three which were presumably paid by note.

It also appeared from the defendant's evidence that the single payment of an annual premium which fell due October 27, 1882, before the modification of the agreement was made, was not paid until December 30, following. The plaintiff called no witnesses, and all these facts appeared from the proofs upon which the defendants relied to assert its right to declare a forfeiture of the policy. What was shown by the plaintiff upon the cross-examination of the defendant's witnesses, was, by way of amplification of the facts brought out upon their direct examination, and was properly received for the purpose of presenting them in their true light for the consideration of the trial court. It was entirely competent for the parties to modify the terms of the original contract with respect to the time of payment, and the effect of a failure to make punctual payment, and the evidence is sufficient to support a finding that the defendant agreed subsequently to the execution of the contract to accept payment of the premiums quarterly or within a reasonable time thereafter, and that the policy should continue in force until such payments were made, providing they were not unreasonably deferred. It has

been repeatedly held both in the state and federal courts that such an agreement may be inferred from the course of dealing between the parties. (*Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 34; *Meyer* v. *Knickerbocker Life Ins. Co.*, 73 id. 516; *Wyman* v. *Phœnix Ins. Co.*, 119 id. 274; *Kenyon* v *K. & M. Assn.*, 122 id. 247; *Atty.-Genl.* v. *Continental Life Ins. Co.*, 33 Hun, 141; *Ins. Co.* v. *Wolff*, 95 U. S. 326; *Ins. Co.* v. *Eggleston*, 96 id. 577; *Ins. Co.* v. *Doster*, 106 id. 37; *Helme* v. *Philadelphia Life Ins. Co.*, 61 Penn., 107.)

It is immaterial how the transaction may be legally designated. If it has the element of advantage to the promissor, or of loss to the promissee, or if there are mutual promises, it may be upheld as a valid agreement supported by a sufficient consideration; or if the insurer by any declaration or course of action leads the insured to believe that by conforming thereto his policy will not be forfeited, if followed by due conformity on his part, it will operate as an equitable estoppel, and in either case the result will be the same. The forfeiture is not incurred, and the policy continues in force.

There is no question of pleading involved. The plaintiff was not bound to allege or prove the payment of the annual premiums when due. The contract is to be read as if the act of 1876 had been literally incorporated into it. There could be no forfeiture for this cause unless the defendant alleged and proved nonpayment after the due service of the notice required by law. This it undertook to do, but failed, because its proofs showed an agreement to accept payment within a reasonable time after the quarterly payment became due, which had not elapsed when the death of the insured occurred. Acceptance of the October installment three days after the January installment became due, waived any forfeiture which might be claimed on account of the omission to promptly make the October payment, and is also strong corroborative evidence of an intent not to rely upon a failure to comply with the requirements of the notice given to make the January payment when due. As the defendant was never in a position where it could insist upon a forfeiture, it becomes

unnecessary to consider the question of the sufficiency of the notice served.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.