# Order of Chosen Friends v. Amelia Austerlitz.

1. BENEFIT SOCIETIES—*How Assessments Must be Made—Burden of Proof as to.*—Assessments by a benefit society must be made in accordance with the laws of the society, and where such a society defends against the payment of a certificate on the ground of the non-payment of an assessment the burden is upon it to prove that the assessment was made in accordance with the provisions of its laws, that the required conditions existed when the assessment was made and that it was not paid.

2. SAME—*Evidence of the Validity of Assessments.*—The fact that an

assessment on the members of a benefit society was made by the proper officer of the society is not *prima facie* evidence of the validity of the assessment.

3. SAME—*Can Not Both Admit and Deny Payment of an Assessment.* —A benefit society can not be heard to say that an assessment was paid, for the purpose of precluding inquiry as to its validity, and that it was not paid for the purpose of enforcing a forfeiture. It must take one position or the other.

4. SAME—*Waiver of Forfeiture of Membership.*—The retention by a benefit society of money paid by a member in settlement of an assessment amounts to a waiver of the right of forfeiture, if such right existed.

5. SAME—*Waiver of Proofs of Death.*—Where the by-laws of a benefit society provide that the subordinate lodge shall forward notice of death of beneficiary members, and that proper blanks for proof of death shall thereupon be furnished, a failure to forward the notice and to furnish the blanks will dispense with formal proofs of death.

6. SAME—*Forfeiture of Membership—Burden of Proof of.*—In a suit on a benefit certificate the defense of forfeiture for non-payment of an assessment is an affirmative one, and the burden of proving it is on the defendant.

7. FORFEITURES—*Are Not Favored by the Law.*—Forfeitures are not regarded with favor, and a party who insists upon declaring a forfeiture must make clear proof and show that he is entitled to make such declaration.

**Assumpsit,** on a benefit certificate. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed March 24, 1898.

H. H. C. MILLER and W. S. OPPENHEIM, attorneys for appellant.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This was an action by appellee against appellant on a benefit certificate issued to her husband, William Austerlitz, June 29, 1889, for the sum of $1,000, payable in the event of his death to his wife, the appellee.

The appellant pleaded the general issue and a special plea averring, in substance, that by the constitution and laws of the order, it was provided that an assessment should be

due and payable from each member on the first day of each calendar month, which each member, without notice or demand, was bound to pay on the last day of the month in which it became due, in default of which he should forfeit all rights and claims under the relief fund, and should stand suspended from beneficiary membership; that, April 1, 1893, an assessment of ninety cents was due and payable from William Austerlitz, which he wholly neglected to pay, and that, by reason of such failure, he was regularly suspended April 30, 1893, etc.

The case was tried by the court, a jury being waived by the parties, and the court found for the appellee and assessed her damages at the sum of $1,120, and rendered judgment accordingly.

William Austerlitz died October 23, 1893. The name of the local lodge to which he belonged was Gœthe Council 33, of Illinois, at the date of the certificate sued on, but the name was subsequently changed to " H. H. Morse Council," which last was its name at the time of the death of William Austerlitz. The evidence shows that the deceased became a member of the order January 13, 1888, at which date a certificate was issued to him, in which his brother Joseph Austerlitz was named as beneficiary, which certificate was surrendered to the appellant; and, in lieu thereof, the certificate sued on was issued; also that all assessments against William Austerlitz prior to assessment 212, were paid during his lifetime. The assessment which it is averred in appellant's special plea was due and payable April 1st, and for the non-payment of which the plea alleges Austerlitz was suspended, was assessment 211, and was the regular assessment for April, 1893, and the evidence shows, and appellant's counsel admits, that assessment 211 was paid. This disposes of appellant's special plea. Appellant's present contention is that an assessment, 212, additional to the regular monthly assessment, was called in April, 1893, and fell due on or before May 15, 1893; that the deceased failed to pay that assessment and by such failure became suspended.

The following are by-laws of appellant:

"Section 291. It shall be the duty of the members to ascertain the amount of their dues and assessments by personal application to the secretary and to pay the same within the time limited for payment without notice or demand, and failure to so pay shall deprive the members of all rights and benefits of beneficiary membership in the order.

"Section 292. An assessment shall be due and payable from every member liable, as provided in section 287 of these laws, on the first day of each calendar month, unless otherwise ordered by the executive committee. Each member shall, without notice or demand, pay the amount of each assessment to the secretary on or before the last day of the month in which the same becomes due.

"Section 293. When more than one assessment is required in any calendar month, then such additional assessment or assessments shall be due and payable on and after the 15th of such month and before the 15th of the next month.

"Section 294. Any member failing to pay any special assessment within said time limited shall forfeit all rights to claims and benefits under the relief fund laws and shall stand suspended from beneficiary membership. Each delinquent member shall stand so suspended until all arrearages and fines shall have been paid to the secretary, and all other laws governing re-instatements have been fully complied with.

"Section 313. When the amount in the supreme treasury, together with the amount receivable during any calendar month, after deducting the amount required for death or disability claims, is less than $3,000, or is not sufficient to pay all claims of which he has written notice, then the supreme recorder shall, in accordance with the provisions of section 293 hereof, collect such additional assessments as may be necessary to make such payments, and shall notify the subordinate councils accordingly."

The additional assessment, 212, could only have been

made in pursuance of section 313, and the burden was on appellant to prove that it was made in accordance with the provisions of that section, and that the conditions specified in the section existed when the assessment was made, and also that the assessment was not paid. 2 Bacon on Ben. Societies, Sec. 469; Niblack on Ben. Societies, Secs. 252, 530; Shea v. Massachusetts Ben. Ass'n, 160 Mass. 289; Tobin v. Western Mut. Aid Society, 72 Ia. 261; Dial v. Valley M. Life Association, 29 S. C. 560; American Mut. Aid Society v. Helburn, 85 Ky. 1; Long Pond Mut. F. Ins. Co. v. Houghton, 6 Gray, 77; Atlantic Mut. F. Ins. Co. v. Fitzpatrick, 2 Gray, 279; Grand Lodge A. O. U. W. v. Bagley, 164 Ill. 340.

In the last case the laws of the society required the subordinate lodge to make an assessment of one dollar on each member holding a certificate, when notified so to do by the grand recorder, and that when the assessment should be made, not later than the 8th of the month, to notify each member thereof not later than the 28th of the month. The subordinate lodge did not notify each individual member of the assessment, but merely read in open lodge the notice from the grand recorder to make the assessment. Held, that the law as to notice was not complied with, the court saying: "The question here is one of forfeiture, and no liberal construction or intendment will be indulged in favor thereof."

Section 313 specifies only two cases in which an additional assessment may be made.

The first is, "when the amount in the supreme treasury together with the amount receivable during any calendar month, after deducting the amount required for death or disability claims, is less than $3,000." In this case the mode of ascertainment whether an assessment can be levied is clear. The amount of cash in the treasury must be added to the amount receivable in the calendar month in which it is proposed to levy the assessment, and from the sum of these two, the amount required for death and disability claims is to be deducted. If the remainder is less than $3,000, an assessment may be levied, otherwise not.

The second case in which an assessment may be levied under section 313, is when the remainder, found as above stated, is not sufficient to pay all claims of which the supreme recorder has written notice.

The depositions of Thomas Linn, the supreme recorder, were read in evidence, the first taken May 14, 1896, the last February 12, 1897. In the first deposition he testified as follows: "There was less than $3,000 in the supreme treasury, after deducting the amount required for death and disability claims of which I had written notice, and it became necessary to make such additional assessment." The witness does not say that he deducted the death and disability claims from the total of cash and the amount receivable during the month; the evident meaning is that he deducted these claims only from the amount of cash in the treasury, taking no account of the amount receivable during the calendar month. Had he added the amount receivable to the cash in the treasury and then deducted the amount of claims, *non constat* that the remainder would not have been $3,000 or more. He says that the assessment was made prior to April 15, 1893, but he can not give the exact date.

In Linn's second deposition, taken about nine months after the first, the following appears:

Q. "What was the condition of the relief fund at the time assessments 212, 213, 214 and 215 were made?"

A. "There was a deficit. There were more claims pending than the receipts would pay with the cash on hand added."

This evidence was evidently intended to bring assessment 212 within the condition secondly specified in section 313, but it fails to satisfy that condition. The condition is not that the remainder shall be insufficient to pay pending claims. The language is, "or is not sufficient to pay all claims of which he (the supreme recorder) has written notice." There is a manifest distinction between pending claims and claims of which the supreme recorder has written notice.

Section 324 of appellant's relief fund laws is as follows:

"Section 324. All proofs for death or disability benefits shall be approved or rejected by the subordinate council to which claimant belongs while assembled in regular session, and such approval or rejection shall be attested by the councilor and secretary with the seal of the council. A medical examiner of the order shall also approve or reject such claims, all of which shall be done before a claim is forwarded."

So long as a claim is before the subordinate council or lodge for investigation, it is a pending claim, and as it may ultimately be rejected, it should not, of course, be considered in passing on the available assets of the society. Hence the word written, in section 313, was inserted advisedly and for good reason. The question is whether adding the cash in the treasury to the amount receivable for the month of April, and deducting therefrom death and disability claims which had been allowed, there would not be sufficient to pay all claims of which the recorder has written notice, and his answer throws no light on that question, because whether the remainder was or not sufficient to pay pending claims, which might ultimately be rejected, is immaterial.

The witness was further questioned and answered as follows:

Q. "What was the condition of the relief fund at the time each of these assessments was made?"

A. "There was a deficit, and receipts were consumed in payment of claims at the time of making each assessment."

It is difficult, if not impossible, to understand this answer. It is clear, however, that it does not bring the assessment within the first condition of section 313, because it is not stated what the deficit was, whether more or less than $3,000, and we think it equally clear that the answer does not state facts within the second condition of that section. To say that there was a deficit is certainly not equivalent to saying that the deficit was not sufficient to pay all claims of which the recorder had written notice. He does not even tell us how the deficit was ascertained. He says "receipts were consumed in payment of claims." To what

Order of Chosen Friends v. Austerlitz.

does this refer? Evidently it can not refer to the amount receivable during the month of April, because the assessment was made prior to the 15th day of that month, and the members of subordinate councils had, by virtue of section 292, until the last day of the month to pay their regular monthly assessments, and the amount receivable, but not yet received, could not be used or consumed in payment of claims.

When he says " the receipts were consumed," he can not refer to the treasury, because as to that he says " there was a deficit," which merely means there was not a sufficient amount, implying that there was some amount, and in his former deposition he substantially testified that there was money in the treasury.

This is positively all the evidence in support of the contention that a condition existed which justified additional assessment 212. No record was introduced showing the balance in the treasury, or the amount receivable in the month of April, or the amount of claims of which the supreme recorder had written notice, in addition to which he testified that he had no personal knowledge of the actual amount in the treasury, and it is plain from appellant's constitution and by-laws that he could not, in his official capacity, have such knowledge, because all moneys collected by subordinate councils on account of the relief fund are sent by such councils directly to the supreme treasurer, who, as the evidence shows, resides in Washington City, D. C., while the supreme recorder resides in Indianapolis.

We think the evidence insufficient to show the existence of either of the conditions specified in section 313, at the time the assessment was called.

Appellant's counsel announces the rather startling proposition that the mere fact that the supreme recorder called the assessment is *prima facie* evidence of its validity. The opinion of the court in Grand Lodge A. O. U. W. v. Bagley, 164 Ill. 340, is a sufficient answer to this proposition. But counsel further argues, alluding to a payment made by the plaintiff to the local secretary, June 7, 1893, that as Auster-

litz caused the assessment to be paid, he can not call in question its regularity. Counsel, however, is met with this dilemma: If the assessment was paid, that is an end of the question, and there is no forfeiture; but if it was not paid, then inquiry as to its validity is not precluded. Appellant must take one horn or the other of this dilemma. It can not be heard to say that the assessment was paid for the purpose of precluding inquiry as to its validity, and that it was not paid for the purpose of enforcing a forfeiture.

If assessment 212 was invalid, this is decisive of the case; but inasmuch as the question has been discussed by counsel, whether the assessment was paid, and as the trial court found that its non-payment was not sufficiently proved; we will next consider that question.

The evidence shows, and counsel for appellant states, that assessments are collected by the secretary of the subordinate council from the members of such council, and the amounts collected are forwarded by him to the supreme treasurer. The evidence also shows that the H. H. Morse Council, of which William Austerlitz was a member, issued to its members pass books in which were entered by the secretary payments by the members of assessments and dues. The pass book of William Austerlitz was put in evidence. Printed in it, under the heading, "Member's Account Book, Chosen Friends—William Austerlitz of H. II. Morse Council," is the following:

"INSTRUCTIONS.

"As soon as the holder of this book receives the notice of an assessment, he should take the book and enter the number of assessment, the amount, and under the heading 'called,' the date of such notice. By referring to his book he will then always be able to tell when the *forty days allowed him to pay*, have expired, and prevent him from getting in arrears, and thus save him the trouble and expense in connection therewith. Whenever a payment is made, the book should be presented to the collector, who enters the date when such payment is made, and his name as an acknowledgment of the receipt thereof."

Order of Chosen Friends v. Austerlitz.

It can not be presumed that these instructions were contained only in the pass book of the deceased. The fair inference is that they were contained in all pass books issued to the members of H. H. Morse Council, and it is difficult to believe that appellant was ignorant of them. The local secretary, under date May 15, 1893, sent a report to the supreme treasurer of collections on account of assessment 212. In that report appears the name " William Austerlitz," and opposite the name and in the column headed " Suspended, date," are the figures " 4—30—93," meaning, as Supreme Recorder Linn testified, that William Austerlitz was suspended April 30, 1893, for non-payment of ninety cents, being the amount to be paid under assessment 212. The supreme treasurer received the report at Washington, D. C., June 5, 1893, and forwarded it to Indianapolis to the supreme recorder, who received it June 16, 1893. That the local secretary made a mistake in the report in marking William Austerlitz suspended April 30, 1893, for non-payment of assessment 212, is clear, because that assessment was not payable by the strict letter of section 293 until May 15, 1893, and the supreme recorder himself testified: " The last day of grace allowed to members for payment of assessment 212 was May 15, 1893." This mistake, obvious to any one acquainted with the by-laws, should have been noticed by the supreme recorder, and he should have notified the local secretary of it and had it corrected. He was the custodian of such reports, and it was his duty, as he, in substance, testified, to notify the local secretary of mistakes in the latter's reports. He not only failed so to do, but as will presently appear, persisted in maintaining that the deceased was suspended April 30, 1893, for non-payment of an assessment due May 15, 1893. After forwarding the report of date May 15, 1893, the local secretary, without the aid of the supreme recorder, evidently discovered his mistake in marking the deceased suspended April 30, 1893, because, in a report of assessment 213 of date June 1, 1893, and which was received by the supreme treasurer June 19th, and by the supreme recorder June 29, 1893, the following appears:

| " Name. | Age. | Amount One Asst. | Date of R. F. Certf. | Date of Rein- statement. |
|---|---|---|---|---|
| William Austerlitz. | 31. | .90 | 1–13–88. | 5–25–93." |

The figures " 5—25—93 " mean that Austerlitz was reinstated May 25, 1893. Supreme Recorder Linn testifies that accompanying the last report, the local secretary forwarded $1.80 on account of assessment 212 and 213 against William Austerlitz. The supreme recorder, still insisting that the deceased was suspended April 30, 1893, for non-payment of assessment 212, refused to accept assessments 212 and 213, which, by the way, were then in the supreme treasury, and inclosed to the local secretary in a letter dated June 29, 1893, a voucher for $2.70 which he claimed was the amount of over-payment on assessment 212, and included the $1.80 forwarded on account of Austerlitz, and directed the local secretary to send the voucher with his next remittance to the supreme treasurer, as so much cash. There is abundant evidence that the local council had been in the habit of advancing assessments for deceased. Lachman, a witness for appellant, who was secretary of H. H. Morse Council in 1893, and so continued until November, 1895, testified, on his cross-examination: "Every month when an assessment was sent away, if he failed to pay, the lodge advanced the money for him, took it out of the general fund and paid his assessment." On his re-direct examination he testified: " I can not tell for how long a time the lodge had been paying Austerlitz's assessment before he was suspended. They were paid for him right along, and when he paid up, then let it run again." Lachman's evidence is corroborated by the pass book.

Now, although by section 293 of the by-laws an additional assessment is payable the 15th of the month in which it is called, and may be paid, to save a forfeiture, by the 15th of the next month, or in thirty days from the 15th of the month in which it is called, the printed instructions in the pass book are that the assessment may be paid in forty days. May 25, 1893, was just forty days from April 15,

1893, the month in which the assessment was called, and it is a significant circumstance that in the report of assessment 213 it is noted that the deceased was reinstated May 25, 1893, the very last day on which his assessment 212 was payable in accordance with the notice in his pass book. Although he was noted as suspended in the report of assessment 212, and as reinstated in report of assessment 213, there was not, in law, any suspension or any reinstatement as so noted. The local lodge evidently discovered that the notation of suspension in the former report was erroneous, and very properly ignored that notation, and acted as if it had not been made. The notation in the last report, which was put in evidence by appellant, that Austerlitz was reinstated May 25, 1893, is evidence tending to show that at that date he was a member in good standing, and had paid all dues and assessments. Appellant's counsel contends that the report of assessment 212, in which the assessment against the deceased is marked unpaid, is evidence that it was unpaid; but it has been shown that the report was erroneous in noting him suspended April 30, 1893, for non-payment of an assessment not finally payable by the strict letter of appellant's by-law till May 15, 1893; also that the report was subsequently disregarded by the secretary who made it and the local council from which it emanated. The report is dated May 15th, and no forfeiture could have occurred until May 16th, because Austerlitz had all of the previous day in which to pay. A report so erroneous in respect to a matter so serious, is not entitled to any weight as evidence, in so far as appellee's claim is concerned.

The deposition of Benjamin Lachman, secretary of H. H. Morse Council, as heretofore stated, was read in evidence, on behalf of appellant. Questioned with regard to assessment 212, he testified : " I do not remember whether William Austerlitz paid that assessment within thirty days after the assessment was made." Questioned as to whether Austerlitz or any one on his behalf paid the assessment prior to May 15, 1893, he answered : " I can not tell as to the date or the number of the assessment. He paid a good

many assessments within thirty days. I know he failed to pay an assessment. After he failed to pay one assessment, he failed to pay assessments which were made shortly after that time," etc. This witness also testified, as before stated, that the lodge paid for him every month when he failed to pay, and when he paid up, then let it run again, and his testimony above quoted may well refer to assessments advanced for him by the lodge, and not repaid by him to the lodge.

The pass book is utterly unreliable evidence as to when any assessment was actually paid, for two reasons: first, the habit or custom of the local lodge to advance monthly assessments for the deceased, in which case he would, of course, be credited with them in his pass book when he *repaid* them; and, secondly, the fact testified to by both the appellee and Lachman, that sometimes Lachman wrote receipts on slips of paper.

It is fair inference from the evidence, that the local lodge, on discovering its mistake in marking William Austerlitz suspended, advanced to him from its general fund the amount of the assessment, as had been its custom, and credited it on assessment 212, and it being too late to forward the amount to the supreme treasurer, as it had already sent in its report of assessment 212 to that officer, it retained it until assessment 213 fell due, and included both assessments 212 and 213 against Austerlitz in its draft which accompanied its report of assessment 213. This is consistent with the evidence that the subordinate council subsequently, June 7, 1893, received from Austerlitz the amounts of assessments 210, 211, 212, 213 and 214. The amount of assessments 212 and 213, namely, $1.80, forwarded to the supreme treasurer by the secretary of H. H. Morse Lodge, was not returned to William Austerlitz, and for aught which appears to the contrary, is yet in appellant's treasury. Linn's letter, put in evidence as part of his deposition, shows that he sent to the local secretary a voucher for $2.70, which he says included the $1.80 sent to the supreme treasurer on account of Austerlitz, with direc-

tions to the local secretary to inclose the voucher to the supreme treasurer with his next remittance, as so much cash. There is no direction to return the amount to Austerlitz, and the evidence shows it was never returned to him. This would seem to bring the case within the rule announced in Railway P. & F. Conductors' M. A. & Ben. Ass'n v. Tucker, 157 Ill. 194, and to have been a waiver of the right of forfeiture, if such right had accrued. The court on the case last cited say : " Forfeitures are not favored in the law, and courts readily seize hold of any circumstances that indicate an intent to waive a forfeiture."

" Forfeitures are not regarded by courts with any special favor. The party who insists upon a forfeiture must make clear proof, and show he is entitled to make such declaration. It is a harsh way of terminating contracts, and not infrequently works great hardships, and he who insists on making such declaration can not complain if he is held to walk strictly within the limits of the authority which gives the right." Palmer v. Ford, 70 Ill. 369.

This language is peculiarly appropriate in the present case, in which a forfeiture is sought to be enforced for the non-payment of ninety cents against the widow of one who had been a member of appellant's order more than five years, and who, it is admitted, had paid all other dues and assessments.

We are of opinion that the learned judge of the trial court was fully warranted in finding that the evidence was insufficient to establish the non-payment of assessment 212.

Appellant's counsel objects that no proofs of the death of William Austerlitz were furnished, as required by appellant's by-laws. The evidence shows that the supreme recorder, ever since June 29, 1893, has persisted in holding that the deceased had forfeited all rights of beneficiary membership and was no longer a member of the order. Lachman, the local secretary, testified that he informed the plaintiff June 7, 1893, when she was acting as her husband's agent, that the deceased had been suspended, and Wilhartz, who went

to the local secretary, Lachman, in the summer of 1893, by appellee's request, and tendered to him $10 on account of William Austerlitz, testified that Lachman refused to receive the money, saying that Austerlitz had been suspended. The local lodge had notice of the death of William Austerlitz by a letter sent by plaintiff to Lachman, the secretary, October 24, 1893, the next day after the death. By section 320 of appellant's by-laws, it is made the duty of the subordinate council immediately to forward to the supreme recorder notice of the death of a beneficiary member, and L. G. Smith, a witness for appellant, testified that he was the supreme representative of the order; that there were forms of proofs of death prescribed by the order, which were kept in the supreme recorder's office, and which were secured, when required, by the sending of a preliminary notice of the death by the secretary of the subordinate lodge to the supreme recorder. There is no evidence that any such notice was sent or forms procured. These circumstances dispensed with formal proofs of death. Anderson v. Supreme Council of Order of Chosen Friends, 135 N. Y. 107; Metropolitan S. F. A. Ass'n v. Windover, 137 Ill. 417, 434; Dial v. Valley Mut. Life Ass'n, 29 S. C. 560; Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696; Covenant Mut. Ben. Ass'n v. Spies et al., 114 Ill. 463.

Forfeiture by non-payment of assessment 212 was not specially pleaded. It is well settled that such defense is an affirmative one, and that the burden to prove it is on the defendant. It is substantially matter in confession and avoidance, and the usual and, as we think, the better practice is to plead it. Joyce says: "It is an affirmative matter, both of pleading and practice, necessary to establish a forfeiture for non-payment of an assessment, that the assessment should appear to have been made in the manner, mode, and in conformity with the authority given, and for a proper purpose." 2 Joyce on Insurance, Sec. 1310.

The question, however, whether such defense can be made under the general issue, not having been raised by counsel, it is not necessary to decide it in the present case.

Appellant's counsel objects that the exclusion by the court of Linn's answers to the 11th interrogatory in his first deposition, and to the 7th interrogatory in his second deposition, was error.   The interrogatories and answers were as follows:

11.  Q.  "State if William Austerlitz paid additional assessment No. 212 during the time within which it was payable?"   A.   "He did not."

7.  Q.   "What was the last assessment paid by William Austerlitz?"   A.   "Assessment number 211.   He was suspended for non-payment of assessment 212, the time for paying which expired May 15, 1893."

It appeared affirmatively by the testimony of the witness Linn, that he had no personal knowledge of the time when any assessment was paid to the subordinate council, and no information except such as he derived from the reports of the secretary of that council, and that his answers were wholly based on the report of the secretary regarding assessment number 212, which report was in evidence.   Such being the case, the admission of the answers, if competent, could have added nothing to the weight of the report as evidence, and their exclusion could not prejudice appellant.

Consideration of other questions discussed by counsel is omitted, their decision being unnecessary to the decision of the case.

The judgment will be affirmed.