(41 App. Div. 131.)

McCLURE v. SUPREME LODGE, KNIGHTS OF HONOR.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. BENEFICIARY ORDER — SUSPENSION OF LOCAL LODGE — WAIVER OF PROMPT PAYMENT OF ASSESSMENTS.
    The acceptance by a beneficiary order of assessments from a local lodge, after the time fixed by the laws of the order for their payment, in a majority of instances, without objection, was such a waiver of a provision authorizing a suspension of the lodge for any delinquency as will preclude the exercise of such right by a summary suspension of the lodge for non-payment of an assessment on the day after it became due, without any previous notice, so as to deprive a member who had made prompt payment of his individual assessment to the lodge of his insurance.

2. SAME.
    After an unauthorized suspension of a local lodge for failure to make punctual payment of an assessment, a misunderstanding arose between the lodge and the head office, owing to an error in a letter making a remittance by the lodge intended to cover the delinquent assessment. No attempt to suspend the lodge because of the error was made, though the draft and letter were returned, and, pending correspondence which resulted in a satisfactory adjustment and reinstatement of the lodge, notices of assessments were sent to it as usual. *Held*, that the matters occurring after the declared suspension, and delays in making remittances pending the settlement, and on which no further suspension was claimed, did not suspend the members of the lodge; nor did the failure of a member to promptly pay subsequent assessments during the negotiations, which assessments the head office refused to receive until the prior assessment had been settled, deprive him of his rights as a member, where such delinquency was common to all the members, the payments were made and received by the local lodge prior to the adjustment with the supreme lodge, and no question was made of the good standing of the member in his own lodge at the time of his death.

3. SAME—PROOFS OF DEATH—WAIVER.
    Where a beneficiary order only furnished blanks for formal proofs of the death of a member on receiving informal notice of such death from the proper officer of the local lodge, a failure to send such blanks on receipt

of proper notice, or to make any request for proofs, is a waiver of the requirement that such formal proofs must be made.

4. SAME—LEGALITY OF CERTIFICATE—PROOF OF SEAL.

When the laws of an insurance association require all benefit certificates to be under seal, and a complaint[e] on such a certificate alleges its issuance in conformity to such laws, and the record sets out a copy which purports to contain the seal of the association, and recites that it has been affixed, an appellate court is authorized to assume that the seal was duly attached.

5. FOREIGN CORPORATIONS—SERVICE OF PROCESS—DESIGNATION OF AGENT.

An attempt by a foreign insurance association to comply with Code Civ. Proc. § 432, subd. 2, by designating a person on whom process may be served in the state, is insufficient to entitle it to the benefit of limitations, where it failed to designate the place where the service could be made, to show the consent of the person designated, or to file the designation in the office of the secretary of state.

Appeal from trial term, Allegany county.

Action by Rebecca J. McClure against the Supreme Lodge, Knights of Honor, to recover on a benefit certificate. There was judgment for plaintiff, on the verdict of a jury, for $3,563.33, from which, and from an order denying a motion for new trial, defendant appeals. Affirmed.

The defendant is a fraternal benefit association, incorporated in the state of Kentucky, and afterwards in the state of Missouri. Its organization includes a large number of local lodges, scattered throughout the Union, and its method of paying death losses is by the assessment plan. The Genesee Valley Lodge, No. 441, was one of these subordinate lodges, organized in March, 1884, and located in Wellsville, Allegany county, in this state. Richard S. McClure was a member of this subordinate lodge, and a benefit certificate was, upon his application, duly issued to his wife, the plaintiff, bearing date April 22, 1884, whereby defendant agreed to pay said beneficiary $2,000 upon "satisfactory evidence of the death" of the insured member. McClure died August 1, 1885, and this action is brought to recover the amount provided for by the benefit certificate.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

W. R. Spooner, for appellant.

Clarence A. Farnum, for respondent.

SPRING, J. It is established in this case that McClure, the insured member, was in good standing in his local lodge at the time of his death. As an individual he was not delinquent. He had paid every call made upon him. Whatever defense there may be to the payment of his benefit certificate arises from the remissness of the officers of the local union, or to a misunderstanding between them and the defendant. Inasmuch as the member himself was paying promptly, and honestly endeavoring to keep alive his certificate, every reasonable intendment will be accorded the plaintiff to prevent a forfeiture of her certificate.

By the constitution and laws of the defendant, assessments were due from the members, payable to the local lodge within 30 days, and the local lodge must remit to the supreme lodge within 40 days, from the date of the assessment calls. If the member failed to respond within the required period, he was suspended, and, unless reinstated in the manner provided by the constitution of defendant,

his benefit certificate was annulled; and a like penalty befell all the holders of certificates of any lodge in case it was suspended. On May 2, 1885, call No. 158 was made upon the Wellsville Lodge for an assessment. The prescribed payments from the members to meet this demand were due June 1st of that year, and the last pay day of the local union to defendant was June 11th. The draft for this' assessment was mailed June 16th, and received June 18th,—seven days in arrears. On the 12th day of June, 1885, the defendant, by its supreme reporter, notified the subordinate lodge it was suspended, by reason of its omission to pay assessment No. 158, which matured on the day preceding. The constitution of defendant justified this suspension. It was entirely regular, and must be held to be effective, unless there was something in the conduct of the defendant tantamount to a waiver of a strict compliance with the requirement of payment on the day when the assessment became due.

Prior to the making of assessment No. 158, there had been sent to this local order, since March 13, 1884, 23 similar calls, and, with three or four exceptions, the receipt of the money had been after the last date of payment. Each of the 8 assessments immediately preceding No. 158 had been in arrears, varying from one to four days; and No. 157, which should have been paid May 26th, was not in fact paid until May 30th. So far as the testimony shows, there had been no complaint because of this uniform default, and certainly no intimation that a suspension would follow a failure to remit promptly on time. There was, therefore, a provision in the laws of defendant providing for immediate suspension of a lodge upon its failure to meet these assessments when due. But we have the invariable practice of the authorized officials of defendant ignoring this strict requirement, until the subordinate lodge may well have understood that the defendant's officers would acquiesce in this dilatory method of payment, and, certainly, that no change in the course of dealing would be insisted upon without advising it such action was designed. There was no notice of the intended suspension, and the assessment was only one day overdue when the officials of the supreme lodge summarily suspended the Wellsville Lodge, apprising them of that fact by mail. The jury were justified in holding the conduct of defendant's officers, in accepting these payments for so long a period after they became due from month to month, was a waiver of prompt payment, estopping them from summarily suspending the local lodge. King v. Association, 87 Hun, 591–595, 34 N. Y. Supp. 563; Teckemeyer v. Supreme Council, 4 App. Div. 537, 40 N. Y. Supp. 23; De Frece v. Insurance Co., 136 N. Y. 144, 32 N. E. 556; Kenyon v. Association, 122 N. Y. 247, 25 N. E. 299; Pratt v. Insurance Co., 130 N. Y. 206, 29 N. E. 117; Van Bokkelen v. Association, 90 Hun, 330, 35 N. Y. Supp. 865; Baker v. Association, 9 N. Y. St. Rep. 653, affirmed in 112 N. Y. 672, 20 N. E. 416.

The rule was stated in 136 N. Y. at page 150, 32 N. E. 558, as follows:

"It was entirely competent for the parties to modify the terms of the original contract with respect to the time of payment, and the effect of a failure to make punctual payment, and the evidence is sufficient to support a finding

that the defendant agreed, subsequently to the execution of the contract, to accept payment of the premiums quarterly, or within a reasonable time thereafter, and that the policy should continue in force until such payments were made, providing they were not unreasonably deferred. It has been repeatedly held, both in the state and federal courts, that such an agreement may be inferred from the course of dealing between the parties."

The nub of this controversy is the effect to be given to this suspension. If it was unwarranted, there is nothing in the subsequent dealings of defendant with the local lodge upon which a forfeiture can be predicated. On the 18th day of June, the supreme lodge treasurer received a draft for $50.70 from the treasurer of the local lodge. This was evidently to pay assessment No. 158, as it corresponded precisely in amount with the sum due for that call; but the local reporter had erased the number "158," substituting "159," as if it were to pay the latter assessment. The supreme treasurer at once wrote the officer at Wellsville, declining to accept this payment, "for the reason that 158 has not yet reached this office from your lodge, and consequently your lodge stands suspended on that assessment. I will hold your remittance, subject to your order and at your risk, for a time, until the matter can be straightened out." If this was an error, as is quite apparent, it was no cause for suspending the local order. Under law 22 of defendant's constitution, if a subordinate lodge failed to send the correct amount, credit was required to be given for the sum received, the local order must be advised in regard to the same, and, in the event of failure to make the necessary correction, suspension would follow. No credit was given, and no suspension was made, in fact, under the law mentioned; so the defense must rest upon the original attempt to suspend.

After the letter refusing to credit this remittance, correspondence ensued between the officers of defendant and of the local lodge, with a view to reach a conclusion as to what assessment was paid by the remittance received by defendant June 18th. On the 24th of June the treasurer of defendant returned this draft, not because of the suspension of the local lodge, but the reason assigned is found in his letter of that date, as follows:

"The report and draft for asst. 159, which I recd. on the 18th inst., may be of help to you in straightening the matter out. I therefore herewith return them to you. The dft. is No. 69,931 on Importers' & Traders' Nat'l Bank of N. Y., for $50.70."

This correspondence culminated in the reinstatement of the local lodge August 15, 1885, although the requirement as to the medical examination of the members seems to have been dispensed with. During this interim, assessments were made by the defendant in the usual manner, and notice thereof sent to the local lodge, continuing down to the call of August 10th. No suspension was made for the omission to pay these calls at maturity, and the order of reinstatement and the notice thereof were based wholly upon the suspension of June 12th. If the suspension had been efficient, the subordinate lodge could have been rehabilitated with the defendant within 30 days upon paying the defaulted assessments and any intervening

assessments accruing, with the fine of 10 cents per member. If they failed in this, then, within 90 days after the suspension of the lodge, reinstatement could be made by the supreme dictator. A member himself, within 30 days after the suspension of his union, could identify himself with another lodge; but during this period the suspended lodge was not a vital institution. The insurance of the member was a dead letter; yet, notwithstanding the position of the local lodge, the defendant continued to pile up the notices of assessment, not simply during the 30 days when voluntary action on the part of the lodge could galvanize it into life, but down to the time of the reinstatement, 2 months after the period of alleged suspension. This might well be regarded as an indication that the suspension was not to be insisted upon. Shay v. Society, 54 Hun, 109, 7 N. Y. Supp. 287; King v. Association, 87 Hun, 597, 34 N. Y. Supp. 563. There was, obviously, an honest endeavor to correct the error in regard to the numbering of the assessment, and the whole matter was apparently held in abeyance, awaiting adjustment, without any design at that time on the part of the defendant's officer to treat the lodge as suspended.

It is urged, however, that McClure was not in good standing with his local lodge. It seems the assessments made from time to time after the order of suspension were not met as they matured. This was common to all the members of the Wellsville Lodge. On the 22d of July, however, McClure paid his three assessments in full. Various reasons make the position of defendant, assailing the relations of McClure with his own lodge, untenable: (1) The defendant had refused to receive payment of these assessments until there was a payment of No. 158. It was in the inconsistent attitude of demanding payment of these calls as they fell due, and then refusing to accept pay thereon. (2) The failure to pay during this period by McClure was purely an omission that his local lodge could take advantage of. Gaige v. Grand Lodge, 48 Hun, 137. The subordinate order (lodge) not only did not seek to do so, but effectually debarred itself from so doing by accepting the assessments of July 22d. (3) The fact the defendant continued to send out these assessments was a notification that it desired the members to remain within the order, and that, upon payment, not alone would the lodge preserve its life, but the certificate retain its vitality, during the term in which the parties were reconciling the differences arising from the misnumbered assessment. McClure, when he paid the three assessments, had the cards, issued by defendant, demanding payment. He paid, expecting his wife would be entitled to the amount specified in the certificate in case of his death. (4) But the defendant's counsel is foreclosed by his admission upon the trial from raising this question. The plaintiff was seeking to show the members of the order in Wellsville attended the funeral services of McClure, when the following occurred:

"The Court: Is his membership put in issue? Defendant's Counsel: There-
·is no denial in the pleadings, nor will there be at the trial, that he was a member of the subordinate lodge. The contention is that he died under suspension, while his lodge was under suspension."

The effect of the concession is that he was a member of the local union, and that the point of attack was the suspension, not of the individual, but of the lodge of which he was a member. On the pivotal question in the case, therefore, the deduction seems irresistible that the course of dealing between the defendant and the local union waived strict immediate payments of these assessments at maturity, and estopped the supreme order from invoking failure to pay as a forfeiture of the certificate of McClure; that the member was in good standing in the local union, and at the time of his death had paid every assessment which had ripened into liability against him.

It is claimed, however, that "satisfactory evidence of death" was never furnished to the defendant, conformably to its laws. The proofs show that, in the event of the death of a member, informal notice was given by the reporter of the local union to the supreme order, and blanks were then provided by the latter, upon which were engrossed the requisite facts, giving full information to the defendant. The local lodge was not supplied with these blanks for general use, but they were sent to meet each exigency as it arose. There was no form prescribed as to the manner in which the officers of the local lodge should give notice of the death of a member. Mr. Browning, the reporter of the Wellsville Lodge, attended the funeral services of McClure, and was, of course, cognizant of his death. On August 7th he wrote the supreme reporter of defendant in reference to the death of McClure, but no blanks were returned to him upon which to make out the requisite statement. The report of August 26, 1885, contains the statement of McClure's death. The letter of Sloat, the supreme dictator of the supreme lodge, of September 17, 1885, alludes to the death of McClure, with the opinion he was in good standing; also, his letter of October 15th, which disputes liability, on the ground of the suspension of the lodge on June 12th; and the letter of the supreme reporter of October 20th refers to the death of this member. The officers to whom notice was to be given knew of the fact, and omitted to supply the local order with the blanks essential to prepare this report. The remissness and default were, therefore, with them, and not with the local order. Order of Chosen Friends v. Austerlitz, 75 Ill. App. 74; Anderson v. Supreme Council, 135 N. Y. 107, 31 N. E. 1092. No complaint was ever made by the officers of defendant that proofs of death should be furnished. No suggestion of any kind was ever given upon this subject. The plaintiff could do nothing. There was no duty insistent upon her to prepare the formal notice of death. The constitution of defendant provides that the local lodge is the agent of the member. I believe the law is not operative against a beneficiary where it relates to the furnishing of proofs after the death of the assured member. That would place the holder of a beneficiary certificate wholly at the mercy of the supreme and subordinate lodges.

The defendant interposed the defense of the statute of limitations. Article 9, § 2, of defendant's constitution provides that a benefit certificate shall be "under seal of the supreme lodge," and signed by

the supreme dictator and the supreme reporter. It is alleged in the complaint that the benefit certificate in question was issued conformably to this requirement. The copy of the certificate forming a part of the printed case purports to contain the seal of the corporation, and the certificate recites it has been affixed. We must conclude, therefore, the seal was duly attached. Barnard v. Gantz, 140 N. Y. 249–258, 35 N. E. 430; Town of Solon v. Williamsburgh Sav. Bank, 114 N. Y. 134, 21 N. E. 168; Insurance Co. v. Bender, 124 N. Y. 47, 26 N. E. 345. The presumption is the authorized officers of defendant complied with this express mandate of their constitution. They possessed no authority to issue certificates, except in pursuance of this direction. Certainly defendant cannot now assert the inference its officers violated the fundamental law of the order for the purpose of invalidating this certificate. The instrument being under seal, its life is for 20 years. Code Civ. Proc. § 381; Royal Bank of Liverpool v. Grand Junction Railroad & Depot Co., 100 Mass. 444; 7 Am. & Eng. Enc. Law (2d Ed.) p. 691; and cases cited above.

The defendant being a foreign corporation, process could not be served upon it, and, like any nonresident, the statute of limitations would not inure to its benefit. But the Code of Civil Procedure (§ 432, subd. 2) provides that the corporation may designate a person upon whom service can be made, and, if that is complied with, the reason for the suspension of the statute does not exist. In this case, however, the attempt to designate such person was inadequate. The section mentioned provides the manner of making this designation, and three essential things were omitted in this endeavor: (1) It failed to designate the place where the service could be made. (2) It lacked the consent of the person designated. (3) It was not filed in the office of the secretary of state. Inasmuch as defendant is asserting its compliance with law in invalidating a certificate duly issued, it must show a fairly strict conformity to the law.

The defendant's counsel insists the designation made was not intended to conform to the section of the Code cited, but was in accordance with chapter 175 of the Laws of 1883. That enactment was primarily for the organization of fraternal insurance societies by residents of the state of New York. Section 9, however, provides for the designation of a principal office in a city, village, or town of the state, "and some person residing in the same city, village or town where such office is located, as a person upon whom service of legal proceedings and papers may be made, as upon such association." This statute, therefore, is intended for the designation both of the principal office and the person to be served, and each in the same locality. Under this statute it is not expected that the superintendent of insurance will be the person designated, and the defendant obviously was not seeking to meet the requirements of this statute. It did not name any principal office in the state. The whole tenor of its designation indicates an effort to comply with the Code.

The defendant's counsel again insists that no demand has ever been made by plaintiff for the amount which she claims to be her

due by virtue of this benefit certificate, as required by the laws of
defendant. The allegation of demand is affirmatively made in the
complaint, and not denied by the answer. While it may be spelled
out from the answer that the reference therein to subdivision 8 was
intended to refer to subdivision 9, which contains the averment
of demand, yet, in a technical defense of this kind, the pleading
will be construed most strictly against the pleader.

The judgment and order are affirmed, with costs to the respond-
ent. All concur.