WILLIAM R. PENNIMAN *vs.* T. W. STANLEY & another.

Norfolk.   Jan. 25. — March 7, 1877.   MORTON & ENDICOTT, JJ., absent.

A. agreed in writing to build a hotel for a corporation and to take in part payment
a certain sum in stock of the same, and, by a separate contract, B. and C., stock-
holders in the corporation, in consideration of A.'s "agreeing to hold and carry"
a certain portion of the stock "free of expense" to themselves, "for two years
from the date of said stock being issued to him," agreed "to *pro rata* the loss or
gain in the value of said stock, at the expiration of the two years."   In an action
upon this agreement, begun September 9, 1875, it appeared that A. received a cer-
tificate of the stock on December 5, 1874, but that it was dated with the assent of
the corporation on July 3, 1873.   The judge, who tried the case without a jury

----

[*] See *Guild* v. *Butler*, *post*, 498.

found as a fact that the execution of the agreement by B. and C. was a considera-
tion for A.'s executing the building contract, and admitted the building contract
in evidence. He also found as a fact that A. had held and carried the stock for
two years before bringing the action, and that the stock was worthless, and ruled
that B. and C. were liable for two thirds of the par value of the amount so held
by A. *Held*, that the building contract was rightly admitted in evidence; that the
finding that A. had held the stock for two years was not erroneous; that .ne agree-
ment of A. with B. and C. was in two parts, and that the division of profit or loss
was to be divided equally between the two parties.

CONTRACT against T. W. Stanley and Joel H. Hills, upon the
following agreement, dated February 18, 1873, and signed by
the plaintiff and the defendants :

" For the purpose of assisting in the consummation of a con-
tract for the building of the Shelter Island hotel the coming
season, by Wm. R. Penniman, for the Shelter Island Park Com-
pany, and on account of said contract, said Penniman has agreed
with said company to take in part payment, $15,000, fifteen
thousand dollars of the Shelter Island Park Co.'s stock at par
value. And in consideration of said Penniman agreeing to hold
and carry $9000, nine thousand dollars, par value of above men-
tioned amount of stock, free of expense, (for two years from the
date of said stock being issued to him,) to the undersigned, Stan-
ley and Hills, they, said Stanley and Hills, agree to *pro rata* the
loss or gain in the value of said stock, at the expiration of the
two years. It is further agreed that said Penniman shall, if
desired by Stanley and Hills, continue to carry the stock one
year longer than is named above, by they, Stanley and Hills,
paying said Penniman interest upon the value of said stock (par
value) for the extra time (one year) so carried. And the settle-
ment as to the loss or gain in value of said stock to be estimated
at the expiration of the three years, instead of the two before
mentioned."

Writ dated September 9, 1875. Trial in the Superior Court,
before *Putnam*, J., without a jury, who allowed a bill of excep-
tions in substance as follows :

The plaintiff offered in evidence the above agreement, and
alsc the written contract for the building of the hotel between
him and the Shelter Island Park Company, referred to in the
agreement, which was admitted under the exception of the de-
fendants.

By the terms of this contract, which was dated February 26, 1873, and purported to be signed by the plaintiff and the president of the Shelter Island Park Company, a corporation established under the laws of New York, the plaintiff agreed to build a hotel for the corporation, and finish it by July 4, 1873, for the sum of $85,000, to be paid at different times during the progress of the work, of which sum $15,000 was to be paid in the stock of the company.

The execution of both contracts was proved, and the judge found that on the day on which the contract declared on was executed, the details of the building contract were agreed upon, although the contract itself was not formally executed until the next day. The defendant Stanley was a subscribing witness to the building contract, and was a trustee and stockholder in the Shelter Island Park Company; and the defendant Hills was also a stockholder in the same company.

The judge also found that the plaintiff had previously made a bid for the building contract, and had declined to take $15,000 of the stock of the corporation, in part payment thereon, which the corporation had desired that he should do; that thereupon the defendants made to him the proposition embodied in the contract declared on, which proposition was accepted; and that the defendant Hills then drew up the contract which was signed by the parties, and the plaintiff thereupon signed the building contract.

The judge also found that the execution by the defendants of the contract declared on was the inducement to the plaintiff to execute the building contract; that the plaintiff received from the corporation a certificate of ninety shares of the stock on December 5, 1874; that on that date the certificate was filled out and torn from the stock book of the company, and handed to him by the treasurer; that, at the plaintiff's request, and with the assent of the corporation, the certificate was then and there, before its delivery to him, dated July 3, 1873; that the building was not completed ready for occupancy on July 3, 1873, but the delay was due to causes for which the plaintiff was not responsible, and on account of extra work ordered by the company, and done under its direction; and that on or before August 15, 1873, the building was so far completed, that the

plaintiff was entitled to receive, and had received, the cash payments due to him under his contract, and was entitled to receive the $9000 in stock, and, at some time after that date, and prior to the date when the certificate was delivered to him, as before stated, he had made a request of the corporation for the stock so due him under the contract, though the precise date of such request was not found.

The judge also found that the plaintiff held the stock until July, 1875, during which month he wrote to both of the defendants asking what he should do with the same, and that he saw the defendant Hills personally, and made the same request of him; that the defendants expressed no desire that he should continue to carry the stock as specified in the contract; that the plaintiff thereupon caused the stock to be advertised and sold at auction, and it was offered for sale, in pursuance of the advertisement, on August 28, 1875, and no bid was made for it by any purchaser; that newspapers containing the advertisements were sent to each of the defendants by the plaintiff, before the sale; and that said stock had no market value on August 28, 1875, or at the date of the writ.

The defendants contended, and asked the judge to rule and find, that this action had been prematurely brought because the plaintiff did not "hold and carry" the stock, "for two years from the date of the stock being issued to him," which date, the defendants contended, was December 5, 1874, when the certificate was delivered to him; but the judge declined so to rule and find, but did find that the date of the certificate of the stock, July 3, 1873, was fixed as the date of issue of the stock, by agreement between the plaintiff and the corporation, and so found that the plaintiff did hold and carry the stock for two years before his action was brought. To this ruling and finding the defendants excepted.

The plaintiff contended, and asked the judge to rule and find, that he was entitled, under the agreement, to recover the sum of $9000 and interest. The judge declined so to rule and find, but did rule that he was only entitled to recover the sum of $6000 and interest from the date of the writ, which he found to be the sum of $6480, and ordered judgment for the plaintiff for that sum. Both the plaintiff and the defendants alleged exceptions.

*A. French*, for the plaintiff.

*W. W. Carruth*, for the defendants.

LORD, J.   The questions raised upon this bill of exceptions
are to be decided by the construction of the contract executed
by the parties.   The contract is inartificially drawn, and no im-
portant legal principle is involved, but the simple question is,
What does the language, which the parties have chosen to use,
import?   It is possible that they have used language which does
not convey the precise idea which they had in their minds, even
if the respective parties had the same idea.   There is no sug-
gestion in the bill of exceptions, and none was made at the
argument, that any of the language used was technical, or was
peculiar to any particular subject, or that any evidence was of-
fered, or was necessary, to indicate that any of the words used
were used in other than their ordinary signification.   We are
therefore to ascertain what is the true meaning of the contract,
using the language of it in its ordinary signification.   To do
this, we necessarily look at the surrounding and attending cir-
cumstances, and apply the language to the subject matter.

In this view, we are satisfied that the presiding judge rightly
permitted reference to the building contract between the plain-
tiff and the Shelter Island Park Company, he having found as a
fact that the present contract had been entered into between the
parties as a consideration of the plaintiff's entering into the con-
tract with that corporation.   The defendants were interested in
that contract; but, whether interested or not, their contract with
the plaintiff was in the nature of a contract of indemnity to the
plaintiff in relation to the value of stock which, by such build-
ing contract, he was to receive in part payment under such
contract, and his entering into that contract was a sufficient
consideration on his part to support the undertaking of the de-
fendants in this contract.   By the building contract, the plain-
tiff was to receive, in payment, stock of the corporation to the
amount of $15,000 at its par value.   It was in reference to a
portion of the $15,000, to wit, to $9000 thereof, that the con-
tract sued upon was made.

The first question between the parties arises upon the mean-
ing of the phrase used: "And in consideration of said Penni-
man agreeing to hold and carry $9000 par value of above men-

tioned amount of stock, free of expense, (for two years from the date of said stock being issued to him,) to the undersigned, Stanley and Hills, they, said Stanley and Hills, agree to *pro rata* the loss or gain in the value of said stock, at the expiration of the two years."

It is to be observed, that, so far as it is a question of fact whether the plaintiff held and carried the stock for two years, the presiding judge has found that fact in favor of the plaintiff; and the question for this court to decide is, whether, as matter of law, the presiding judge could properly so find. And we are of opinion that he could. It will be noticed that the agreement nowhere speaks of a certificate of stock; nor does it appear that any certificates of stock had ever been issued, except the certificate which "was filled out and torn from the stock book of the company, and handed to him [the plaintiff] by the treasurer." The phraseology of the first part of the extract quoted is, "to hold and carry $9000 par value of above mentioned amount of stock, free of expense to said Stanley and Hills from the date of said stock being issued to him." The parties knew that the plaintiff was to take in payment, under his contract for building the hotel, $15,000 par value of the stock of the Shelter Island Park Company; and in relation to $9000 par value of the said $15,000 amount of stock, the defendants made the agreement declared on. This contract related to the stock, not to the certificate, which might or might not be issued; and the time when the plaintiff should have evidence of his title to the stock, by means of a certificate of it, was wholly an unimportant matter. The agreement rather is that he shall be paid, to that extent, by stock which he will not dispose of to other parties for the space of two years; at the expiration of which time, the defendants were to share with him in the profit or loss upon it. The time when he should become entitled to the stock was to be determined by the building contract, to which the parties to this agreement referred in their contract. The question was, when was the stock his, not when he received evidence of it; and, in entire conformity with the building contract, the time was fixed by the parties to that contract; and we cannot say, as matter of law, that the presiding judge erred in finding the fact that the plaintiff had held the stock two years, simply because, during a

very large part of that time, he had not in fact a certificate of the stock, when such certificate, for the purposes for which he held the stock, was wholly unnecessary. The fact that he took a certificate when the time was approaching at which he would need it, is not conclusive that the stock had not long before been held by him. If, however, by the use of the word "date," it were necessary to imply that the parties had in contemplation a certificate of stock to be issued, it would do no violence to the letter or the spirit of the contract, to deem the conventional date adopted by the parties to be the true date in the interpretation of the contract.

The presiding judge having found that the plaintiff had held the stock for the period of two years, it follows that the present action can be maintained; and the question remains, What is the true measure of damages by reason of the refusal of the defendants to contribute to the loss which the plaintiff says he has suffered on account of the worthlessness of the stock? The presiding judge ruled that, by the true construction of the contract, the plaintiff was entitled to recover only two thirds of the amount of the $9000, to wit, $6000, and found that amount, with interest from the date of the writ, for the plaintiff. The plaintiff contended that he was entitled to recover the whole amount. The defendants contended that, if the presiding judge was right in his construction of the contract, and that the defendants were liable for two thirds the amount of the loss upon the stock, the liability must be a liability in severalty, each for $3000; that no joint liability exists, and, therefore, that no judgment can be entered upon the pleadings. We cannot adopt either of these as the true construction of the contract. The parties have chosen to adopt the words of a dead language with which to express the obligation incurred. In this they are certainly not more felicitous than in the use of the English language. It is evident from the contract that the words "*pro rata*" are used as a compound word and as a verb. They agree "to *pro rata*" the loss or gain. It is quite clear that it is a contract of two parts, and not tripartite. The parties are, Penniman, of the one part; Stanley and Hills, of the other part. Penniman is the owner and holder of the stock; the obligation of the parties of the other part is in the nature of a guaranty

of the value of the stock. Their obligation is not to indemnify Penniman, nor to make the stock of par value to him. It is " to *pro rata* " the loss or gain, — that is, to divide the loss or gain. It is not to divide between themselves the loss and gain, but to divide it with the party with whom they contract. The defendants, as one party, jointly contract with the plaintiff as the other party, and, as joint contractors, they are liable to share proportionately with him in the loss ; and it follows, of course, that it is one half of the loss for which they are jointly liable. In this view, the exceptions of the defendants upon the questions of liability and upon the admission of evidence must be overruled, while, upon the measure of damages, the exceptions of the defendants must be *Sustained.*