JAMES F. ALMY *vs.* BENJAMIN ORNE.

Essex.    November 7, 1895. — January 3, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Contract by A. to pay B. for becoming a Director in a Corporation not
void as against Public Policy.*

An open contract by A. to give B. for becoming a director in a street railway com-
pany a stated number of shares of its stock is not unlawful as against public
policy if it appears that A. owned or represented all the shares, that B. took his
office unhampered, and that A.'s inducement to make the bargain lay wholly in
the local importance of B., the strength which it would give the company to
have B. connected with it, and a legitimate expectation of help in carrying out
plans of consolidation and extension from B.'s known views.

CONTRACT, to recover damages for breach of a contract to
give the plaintiff fifty shares of stock in the Naumkeag Street
Railway Company, in consideration of the plaintiff's becoming
a director in the company. The answer was: 1. A general
denial. 2. Failure of the plaintiff to carry out his agreement.
3. That the contract was illegal and void.

At the trial in the Superior Court, before *Bond*, J., the plain-
tiff testified that in June, 1890, the defendant said to him that
he desired to have the services of the plaintiff in an enterprise
he was carrying through in Salem; that he had bought a con-
trolling interest in the stock of the Naumkeag Street Railway
Company, and controlled the remainder thereof and wanted to
make some important changes in the road, putting in electricity
and extending the road, and that he would give the plaintiff
fifty shares of the stock if he would take the position of direc-
tor, adding that it was very important to have a Salem man as a
director; that the stock was worth $150 a share; that he would
take it off the plaintiff's hands at any time for $125 per share;
that he wanted to buy the Lynn and Boston Railroad and to con-
solidate the two roads, so as to have these and other roads under
one management; that he wanted to equip the Naumkeag road
with electricity; that he wanted to get rights to do so in several
towns where the road ran; that he proposed to extend the road

to Ipswich and to Lynn ; that he wanted some man who knew what could be done, and who would help him to do it, so he desired the plaintiff to help him as a director in the management and in the transformation of the road to electricity, and to make all arrangements necessary ; and that it was important to control the road so that the public would have confidence in it.

The plaintiff further testified that he acted as a director by consulting with the defendant when he wanted him to, and with the general manager and attorney of the road, and did what he could to carry out the defendant's plans, but did not attend any meeting of the directors, or attend any hearings upon any matter connected with the business of the company ; that he did speak to one or two men in Beverly in relation to the equipment of the road with electrical appliances for motive power in that town, and he advised the defendant, as to the management of the road, to be more cautious, and to proceed with more regard to the wishes of the people in the community where the railroad was situated.

On December 12, 1890, the plaintiff wrote to the defendant a letter, saying : " I find in a conversation that there appears to be so much feeling on the side of the Electric Light Co., and in my conversation with you a similar feeling against the Co., and there are so many complications arising from my position as director in both Co.'s, that I must decline one or the other. I feel that originally having started the electric light business, my first duty is there, and it is perfectly clear to my mind that my influence is of so little value to you, that another man would serve you better, and I therefore respectfully offer my resignation as a director in the Naumkeag Road, to take effect immediately."

The plaintiff testified that he had a conversation with the defendant on the same day, in which the defendant told him that, considering the then financial situation, it would be disastrous to the interests of the company if the plaintiff should resign, and said that, if he would remain a director for the balance of the year, he would do as he had agreed in relation to the shares of Naumkeag stock. There was evidence that the defendant told the plaintiff, at the time the contract was made, that the syndicate, of which he was one, had purchased all the stock of the Naumkeag Street Railway Company.

The defendant denied that he promised to give the plaintiff any stock of the Naumkeag Company, but testified that, at their conversation in June, 1890, he detailed his plans substantially as testified to by the plaintiff, and said that if the plaintiff would accept the office of director, and would use his influence and assistance in equipping the road with electricity, in the extension of the lines, and in the purchase of shares of the other roads, when the stock should be divided the company would give to the plaintiff fifty shares of the Naumkeag Street Railway Company stock.

The defendant testified, on cross-examination, that he said to the plaintiff, at the time the alleged contract was made, that he and several other gentlemen were associated as a syndicate; that if they bought the other railroads the stock would be divided, but until consolidation not a share, whether of Naumkeag stock or that of other corporations, could be divided; but that if they had not been successful in buying the other roads they would have divided the Naumkeag stock; and that the plaintiff wanted one hundred shares, but he said, "No, Mr. Almy, I can only give you, as the syndicate has agreed, fifty shares."

The defendant also testified, in regard to the interviews between himself and the plaintiff on December 12, 1890, that the plaintiff absolutely and positively resigned and refused to withdraw his resignation, and that the defendant did not, at that time, agree to give to the plaintiff fifty shares of Naumkeag stock if he would remain a director during the year, but that he may have said to him that the company would distribute to him fifty shares if he continued to be a director, and to aid in the various enterprises of the company until the stock should be distributed. The defendant also testified that the plaintiff was not in fact a director, and did no acts as a director after December 12, 1890.

At the close of the testimony, the defendant requested the judge to rule that the contract was void, as against public policy, and that the plaintiff could not recover. The judge refused so to rule.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in November, 1895, and afterwards was submitted on the briefs to all the judges.

*H. P. Moulton*, for the defendant.

*W. H. Niles*, for the plaintiff.

HOLMES, J.    This is an action to recover damages for breach of a contract to give the plaintiff fifty shares of stock in the Naumkeag Street Railway Company, in consideration of the plaintiff's becoming a director in that company.    The case is here on an exception to the refusal of the court to rule that the contract declared on and put in evidence was against public policy and void.    Of course the ruling must be considered with reference to any contract which might be found from the evidence.    There is no doubt that the jury might have found a different contract from that which we have stated, and which is the one alleged in the declaration.    They might have found an agreement on the plaintiff's part so far hampering the exercise of his own judgment as director as to raise serious questions. We appreciate the arguments in favor of such a finding on the matter of fact.    But the jury were warranted by the evidence in finding that the defendant owned or represented all the shares, that the plaintiff took his office unhampered, and that the defendant's inducement to make the bargain lay wholly in the local importance of the plaintiff, the strength which it would give the company to have the plaintiff connected with it, and a legitimate expectation of help in carrying out plans of consolidation and extension from the plaintiff's known views.    If these were the only motives for the contract, and if its contents were only what we have stated, we are not prepared to say, either for substantive reasons or because such a transaction may cover others less free from objection, that it is against public policy for one man openly to pay or to promise to pay another in order to induce him to take part in a venture, and to become a director in the management of it.

*Exceptions overruled.*