## EDMUND WOOD *vs.* WALTER B. FARMER.

Bristol.    October 26, 1908. — November 24, 1908.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Contract*, Construction, Assignment, Validity. *Practice, Civil*, Parties, Demurrer.
  *Evidence*, Extrinsic affecting writings. *Assignment.    Statute of Frauds.    Wa-
  gering Contracts.    Words, " Pro rata," " Jointly."*

A contract in writing was made between an individual as the party of the first part,
   a corporation as the party of the second part, and seven "other persons . . .
   designated as the guarantors, parties of the third part." The contract provided,
   among other things, for the payment of $25,000 by the corporation to the party
   of the first part.  The undertaking of the guarantors was stated as follows :
   " The guarantors jointly guaranty the payment of said $25,000, or any part there-
   of, *pro rata*, and also that the corporation will fully and completely perform and
   fulfil the terms of the agreement with the party of the first part." The corpora-
   tion having failed to pay the $25,000, an action of contract was brought against
   one of the guarantors to recover one seventh of the $25,000, and he demurred
   to the declaration on the ground that the undertaking of the guarantors was a
   joint guaranty, and that the other guarantors should be joined as defendants.
   *Held*, that the demurrer should be sustained, since the undertaking of the guar-
   antors was a joint guaranty, it not having been intended by the use of the words
   " *pro rata* " to change the whole character of the undertaking from what ex-
   pressly was stated in the contract to be a joint guaranty to a several guaranty
   by each guarantor of only one seventh of the whole $25,000.
By the terms of a contract in writing the party of the second part agreed to pay
   to the party of the first part $25,000, and seven individuals as parties of the
   third part agreed to " jointly guaranty the payment of said $25,000, or any part
   thereof, *pro rata*." After the signing but before the delivery of the contract by
   F., one of the guarantors, he inquired of the party of the first part as to his
   liability thereunder, and the party of the first part wrote him a letter stating
   that he, the party of the first part, had submitted the paper to and had been
   informed by his attorney that the contract " was a limited one, and not a joint
   and several agreement, that is to say, each one of the guarantors is liable only
   for one seventh of the total amount. . . . I therefore advise you that said . . .
   contract is a  *pro rata* one, and that you . . . are only liable for one seventh of
   the amount underwritten." The party of the second part failed to perform the
   contract, and the party of the first part duly assigned his interest to one who
   brought an action for one seventh of $25,000 against F. alone.  F. demurred.
   *Held*, that the letter of the party of the first part to F. did not purport to and
   did not make a change in the contract nor in any way affect the legal rights of
   any of the parties, it being merely an expression of opinion on the part of the
   party of the first part, and it not appearing that the party of the second part
   and the other six guarantors had any knowledge of it.
A corporation as party of the second  part made a contract in writing with an
   individual as party of the first part, whereby, upon another corporation being
   formed, the party of the first part agreed to acquire a certain amount of its

stock and to sell it to the party of the second part for a stipulated price which the party of the second part agreed to pay. An individual joined in the contract as party of the third part, guaranteeing the performance on the part of the party of the second part. The party of the first part fully performed, but the party of the second part did not pay the amount agreed upon. Thereupon the party of the first part executed and delivered an instrument which purported to assign all his rights under the contract to one who in his own name brought an action thereon against the guarantor. The guarantor contended that the contract was not assignable. *Held,* that the contention was not well founded, since, all things necessary to create a liability of the second party to the first party having happened and been performed, the rights of the latter were assignable and the assignee properly brought an action in his own name in accordance with R. L. c. 173, § 4.

A contract in writing by whose terms, upon the organization, later to be accomplished, of a certain corporation by "certain persons" under specified conditions and the acquirement of the title to a certain number of shares of its stock by the party of the first part, the latter agreed to sell and the party of the second part agreed to buy such shares for a certain sum, and various individuals guaranteed that the party of the second part would pay the price agreed upon, is not within the provisions of R. L. c. 74, § 7, providing that a contract for the sale of stock in a corporation shall be void unless the person contracting to sell is, at the time of the making of the contract, the owner or assignee thereof or properly authorized by the owner or assignee or his agent to make such contract.

CONTRACT, in two counts, each upon an agreement in writing. Writ in the Superior Court for the county of Bristol dated December 18, 1903.

The agreement upon which the first count was based was in substance as follows:

"Agreement made this 16th day of July, A. D. 1903, between Paul W. Abbott . . . and A. N. White . . . parties of the first part, the Commonwealth Securities Company, a corporation . . . party of the second part, and the other persons whose names are hereto subscribed, and hereinafter designated as the Guarantors, parties of the third part.

"Whereas, certain persons have agreed to organize a new corporation under the laws of the State of Arizona for the purpose of purchasing the properties of the Anita Consolidated Copper Company, the said corporation to be named the Anita Copper Company, and

"Whereas, the said Anita Copper Company is to be capitalized at $5,000,000 and certain of the stock of the par value of $2,600,000 is to be placed in the treasury of the said Anita Copper Company, the remainder of the par value of $2,400,000 is to be issued for the purchase and acquisition of the properties of the

said Anita Consolidated Copper Company, and in payment of its debts, and for all other purposes, so that the said property of the said Anita Consolidated Copper Company may become vested in the Anita Copper Company, free from all debts, liens and incumbrances, especially certain royalty liens, amounting in the aggregate to the sum of $250,000. Three of the directors of the said corporation are to be selected from or nominated by the Guarantors, and

"Whereas the parties of the first part have agreed to acquire the title to certain of the shares of the said Anita Copper Company, of the par value of $5 per share, and

"Whereas the said Securities Company desires to purchase thirty-three thousand three hundred and thirty-three shares of the said Anita Copper Company,

"Now, therefore, if the said Anita Copper Company be organized, and the said property acquired free from all incumbrances and liens in the manner hereinbefore set out, the parties hereto agree as follows:

"1. The parties of the first part agree to sell, assign, transfer and deliver to the said Securities Company thirty-three thousand three hundred and thirty-three shares of the stock of the said Anita Copper Company, upon the organization of said Company and its issuance of certificates of stock for the sum of $25,000, the same to be paid on or before November 1, 1903. The parties of the first part also agree that they will not sell any of the stock of the said Anita Copper Company in lots of less than $10,000 par value, while this agreement and a certain other agreement made between the Securities Company and the said Guarantors of even date herewith remains in force.

"2. The Securities Company agrees to purchase thirty-three thousand three hundred and thirty-three shares of the said Anita Copper Company from the parties of the first part, and to pay therefor the sum of $25,000 on or before the first day of November, 1903.

"3. In consideration of the premises, the Guarantors jointly guarantee the payment of said $25,000 or any part thereof *pro rata* and also that the Securities Company will fully and completely perform and fulfil the terms of this agreement with the parties of the first part.

"In witness whereof, the parties of the first part hereunto set their hands and seals, and the party of the second part has caused its corporate seal to be hereunto affixed, and these presents signed by Frank B. Keever, its Treasurer, hereunto duly authorized, and the parties of the third part have hereunto set their hands and a common seal the day and year first above written." [Here followed the signatures of Abbott and White, of the Commonwealth Securities Company, and of seven individuals, among them the defendant.]

The agreement upon which the second count was based was exactly like the above agreement, except for a difference in the amounts and the number of shares.

Each count alleged that Abbott and White had assigned their rights under the contract to the plaintiff, and copies of the instruments of assignment under seal were annexed to the declaration.

There were further allegations, *seriatim,* that each condition precedent to demanding performance of the agreements on the part of the guarantors had happened or had been performed.

Further allegations were in substance as follows: Before the delivery of the contracts, the defendant inquired of Abbott and White "as to his liability under" them, and in reply to such inquiry they wrote and sent to him the following letter, "which," each count alleged, "was duly received by the defendant [and] became part of the agreement between the defendant and White and Abbott": "August 20th, 1903. Mr. Walter B. Farmer, Boston, Mass. Dear Sir: In response to your inquiry regarding the liability of the seven guarantors upon the underwriting and contract of the Commonwealth Securities Company to us, we have submitted the papers to our attorneys, and they have advised us that the underwriting and contract is a limited one, and not a joint and several agreement, that is to say, each one of the guarantors is liable only for one seventh of the total amount, that is to say, $75,000. In accordance with such advice from our attorneys, we therefore advise you that said underwriting and contract is a *pro rata* one, and that you and each one of the underwriters or guarantors are only liable for one-seventh of the amount underwritten, to wit, one seventh of $75,000. Trusting that this will answer you fully, we remain, very truly yours, Paul W. Abbott, A. N. White."

Each count continued : " That the contract of the defendant was a several contract by which he [the defendant] guaranteed the payment to said Abbott and White or their assigns of one seventh of said sum . . . provided the same should not be paid by the Commonwealth Securities Company."

The defendant moved to dismiss the action and demurred, as stated in the opinion. The motion and demurrer were heard before *Raymond*, J., who sustained the demurrer, ordered judgment for the defendant and, at the request and with the consent of the parties, reported the case for determination by this court.

*E. D. Stetson & G. Geils, Jr.*, for the plaintiff, submitted a brief.

*E. F. McClennen*, for the defendant.

KNOWLTON, C. J.   The defendant filed a paper which is entitled " Motion to Dismiss and Demurrer." It begins by stating that six other persons whose names are given are necessary parties defendant in the suit, and avers that therefore the defendant should not be held to answer, and the writ should be abated and the action dismissed. This is an answer in abatement, and it properly raises the first question in the case. Then follows, in the same paper, without waiving the preceding answer, a demurrer setting up these and other facts as grounds of the demurrer. No question is raised by either party on the pleadings.

The question as to nonjoinder arises under the third clause of the contract declared on, which is in these words: " In consideration of the premises the guarantors jointly guaranty the payment of said $25,000, or any part thereof, *pro rata*, and also that the Securities Company will fully and completely perform and fulfil the terms of the agreement with the parties of the first part." The defendant is one of seven guarantors who signed the contract. Is the undertaking contained in this clause joint or several? The words " *pro rata* " are all that create a possibility of a doubt about it. Without these words, even if the word " jointly " were omitted, it would be unquestionably a joint undertaking. *Bartlett* v. *Robbins*, 5 Met. 184. *Donahoe* v. *Emery*, 9 Met. 63. The word " jointly " emphasizes its character by an express statement. Do the words " *pro rata* " change its meaning and legal effect? We think they do not. See *Bartlett* v. *Robbins, ubi supra; Penniman* v. *Stanley*, 122 Mass. 310. It

is difficult to understand their exact significance. As here used they are not proper to characterize several action as distinguished from joint action. They more naturally refer to the proportion of the whole amount that the guarantors are to pay jointly, if payment of only a part should be required under the guaranty. The first thing provided for is a guaranty of payment of the whole sum of $25,000, and the second thing provided for is the payment of any part thereof, *pro rata.* It seems to us to be an inapt expression, used to indicate a payment of any proportional part of the whole sum in the same manner and upon the same terms as payment of the whole would be made. We think it was not intended to change the whole character of the undertaking from what is expressly said to be a joint guaranty to a several guaranty by each person of only a fractional one seventh of the whole sum of $25,000 or any part thereof.

The next question is whether the letter written to the defendant by Abbott and White, after the contract was signed and before its delivery, changed its legal effect. We think it plain that it did not. The letter did not suggest a change in the contract, much less did it purport to make a change. It told of the advice of counsel that each of the guarantors was liable for only one seventh of the whole amount, and it expressed the concurrence of the writers in that advice and opinion. There is nothing to indicate that the Commonwealth Securities Company, or either of the six joint guarantors other than the defendant, had any knowledge of the letter. It was a mere expression of opinion as to the legal effect of the contract in writing. This opinion and the expression of it to one of the seven guarantors did not change the contract, or affect the legal rights of any of the parties. The action cannot be maintained without a joinder of the other necessary parties. The same considerations apply alike to both counts of the declaration.

The presiding judge sustained the demurrer and ordered judgment for the defendant. The grounds of his decision are not stated in the report. Very likely they were those which we have already considered. Other grounds of demurrer have been argued by both parties, and it may be well to consider them.

It is contended that the plaintiff cannot maintain his action as assignee of Abbott and White. An action at law brought in

his own name by the assignee of a chose in action is now permitted by the R. L. c. 173, § 4. Upon the averments of the declaration, it appears that all conditions necessary to create a liability upon the guaranty to White and Abbott have been performed, and, so far as appears, there was nothing more to be done by them at the time of the assignment. The conveyance simply worked a transfer of their right to receive a payment from the guarantors, without affecting the interests of the guarantors. The decisions in *Boston Ice Co.* v. *Potter*, 123 Mass. 28, and *Pike* v. *Waltham*, 168 Mass. 581, cited by the defendant, are not applicable to this case.

Nor can a successful defense be made under the R. L. c. 74, § 7. One of the purposes of this statute is to prevent the making of gambling contracts in the form of sales of stock. This is not an action upon a contract for a sale of a certificate of stock of which the party contracting to sell is not the owner. It is a contract contemplating the performance of various conditions. Among them were the organization of a corporation with a certain capitalization of stock, and the purchase by the corporation of the property of another corporation, and the selection of a part of the directors in a specified way, and the sale of a certain number of shares of this stock to the Commonwealth Securities Company, all of which, according to the averments of the declaration, have been performed. The contract declared on is not void under the statute just cited.

The pleadings and the form of the report leave us doubtful in regard to the order that should be entered. The case was heard upon issues of law, and from the fact that the judge ordered judgment for the defendant after sustaining the demurrer, and then reported the case, we infer that the plaintiff did not desire to amend his writ. There was no formal joinder of an issue of law upon the answer in abatement. On a decision of such an issue against the plaintiff, or upon a similar decision on the demurrer, judgment for the defendant would follow, unless the plaintiff moved to amend his writ. The entry is to be judgment for the defendant, unless within fifteen days the plaintiff shows cause for some other disposition of the case in the Superior Court.

*So ordered.*