GEORGE W. HAYDEN *vs.* CHARLES H. BEANE & others.

Middlesex.     November 7, 1935. — January 30, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract*, Consideration, Under seal, Validity. *Corporation*, Stockholder.

A written contract purporting to be sealed but without seals affixed is a sealed instrument by force of G. L. (Ter. Ed.) c. 4, § 9A, and imports consideration.

A contract by the holders of the entire common stock of a corporation with a person elected to be its president and a director, who had agreed to serve as its general manager for a certain term, to elect his nominee a director, and to vote their stock so as to ensure the election of a board of directors favorable to his continuance in the offices of president and director so long during the term as he should faithfully fill such offices, was not illegal nor against public policy.

BILL IN EQUITY, filed in the Superior Court on February 1, 1935.

A demurrer by the defendants was overruled by *Morton,* J., who reported his order.

*R. B. Owen,* (*E. R. Anderson* with him,) for the defendants.

*P. D. Turner,* (*C. W. Spencer* with him,) for the plaintiff.

CROSBY, J. This is a bill in equity brought to reach and apply shares of stock owned by the individual defendants in the Old Medford Rum Distillery, Inc., the corporate defendant, in satisfaction of the plaintiff's claim for the alleged breach of a contract entered into by him with the individual defendants. The bill alleges that the corporate defendant is a corporation organized under the laws of this Commonwealth having its usual place of business in Wakefield, in this Commonwealth; that on or about May 18, 1934, the plaintiff entered into a written agreement with the defendants Charles H. Beane, Arthur M. Cripps and Henry V. Greene, copy of which is annexed marked "A"; and that on said date the plaintiff was elected president of the defendant corporation and a member of its board of directors. The agreement recites that, in consideration of the plaintiff's entering into a contract with the defendant corporation to serve as its general manager for a term of seven years, "it is mutually understood by and agreed by and between the said stockholders and the said Hayden as follows": (1) the stockholders, upon the plaintiff's accepting said office in the company and the employment by it, will transfer or cause to be transferred to him twenty-four shares of the common capital stock of the defendant corporation; (2) they will cause to be elected to the board of directors of the company such director as the plaintiff may nominate in addition to himself, "so that said Hayden and his nominee fill two vacant directorships now existing,"

thereby resulting in a board of five members; (3) "they will at all times vote stock held by them so as to ensure the election of a Board of Directors favorable to the continuance of said Hayden in the offices of President and Director of the Company so long as he shall honestly and faithfully serve it" in said offices; (4) they will not sell, assign or transfer their stock excepting "one to another, or the others, or to said Hayden without first offering the same to the Board of Directors of said Company for purchase by said Board of Directors for said Company or for themselves individually, as said Board of Directors may elect at the same price as may be offered elsewhere before said stockholders shall be free to sell said stock elsewhere"; (5) Hayden "will accept an election to the office of President and Director of said Company should said election be made, provided he is also tendered a contract, acceptable to him, arranging for his services as General Manager of said Company."

It is alleged in the bill that on May 18, 1934, after the written agreement above referred to was entered into, the plaintiff "was duly elected president of the defendant . . . [corporation] and a member of its board of directors, and accepted said elections, and has duly performed all terms and conditions of said agreement by him to be performed, and honestly and faithfully served the company in said offices, as agreed in said agreement"; that after the making of the agreement the individual defendants refused to transfer to the plaintiff twenty-four shares of the common capital stock of the company as provided in the agreement; that they have refused to vote the stock held by them so as to ensure the election of a board of directors favorable to the continuance of the plaintiff in the offices of president and director of the company, but in disregard of the plaintiff's rights in the premises, on or about September 25, 1934, without notice to him, secretly met, and by agreement among themselves in fraud of his rights, caused a person other than the plaintiff to be elected president and a director of the company, all to the plaintiff's damage.

The defendants demurred to the bill assigning as grounds

of demurrer, in substance, (1) that the bill does not set forth sufficient facts to entitle the plaintiff to maintain the suit, (2) that the contract set forth in the bill does not contain provisions of mutual consideration and is therefore *nudum pactum*, (3) that the contract set forth in the bill is on its face contrary to public policy, and (4) that the contract set forth in the bill "is indefinite as to essential terms, and therefore it is *nudum pactum*."

It is plain that the agreement is not invalid for want of consideration; apart from the mutual promises of the parties it constituted an instrument under seal. Although no seals were affixed to it after the names of the signers, the testimonium clause recites "In witness whereof, the said parties have hereunto and to an instrument of like tenor and effect severally set their hands and affix their seals this 18th day of May, 1934." That recital is sufficient to constitute it an instrument under seal, within the provisions of G. L. (Ter. Ed.) c. 4, § 9A. See *Alfano* v. *Donnelly*, 285 Mass. 554, 556.

The defendants Beane and Cripps were the holders of all the common capital stock of the defendant corporation. The contract provided that the defendant Greene should become a stockholder by the transfer by the other two defendants of some of their shares. It also provided that the individual defendants should transfer to the plaintiff twenty-four shares of the common stock of the company upon his accepting the office of president and agreeing to act as general manager of the company for seven years. The bill alleges that the plaintiff performed the terms of the contract, and that he honestly and faithfully served the company in said offices. The defendants contend that the agreement made by them to vote the stock held by them was illegal, and against public policy. The case of *Guernsey* v. *Cook*, 120 Mass. 501, cited by the defendants, is plainly distinguishable in its facts from the case at bar. In that case a stockholder in a corporation agreed, in consideration of the purchase of a part of his stock at a price named, to obtain for the purchaser the office of treasurer of the corporation at a fixed salary and in case of his removal to repurchase

the stock at par. The contract was held void as against public policy and a fraud on the other members of the corporation. The defendants also cite *Hellier* v. *Achorn,* 255 Mass. 273, where it was held that the transfer of stock under an illegal agreement was unenforceable and void. These cases are not applicable to the facts in the present case.

The fact that the defendants Beane and Cripps were the holders of all the common stock of the company makes it plain that no other stockholders could be affected adversely by the agreement. It is apparent from the terms of the contract that the stockholders deemed it important to the corporation and its directors that the plaintiff should become the president and general manager of the company, and in order to secure his services they were willing to transfer to him twenty-four shares of the common stock; and he agreed to serve as such general manager for seven years. The promise of the stockholders that they would cause the plaintiff to be elected to the board of directors, and also such person as the plaintiff might nominate in addition to himself, so that the entire board would consist of five directors, and the further promise of the defendant stockholders that they would "at all times vote stock held by them so as to ensure the election of a Board of Directors favorable to the continuance of . . . [the plaintiff] in the offices of President and Director of the Company so long as he shall honestly and faithfully serve it" in said offices, were not contrary to public policy or otherwise illegal. It is evident from these provisions of the contract that the individual defendants believed that the best interests of the corporation required that the plaintiff be elected to these offices and that he should serve as its general manager for a term of at least seven years. The agreement so far as appears was entered into by the parties in good faith with the mutual understanding and belief that it would result in benefit to the corporation and to the stockholders. We are unable to find that it was against public policy or illegal on any other ground. *Almy* v. *Orne,* 165 Mass. 126. *Brightman* v. *Bates,* 175 Mass. 105, 111. *Bullivant* v. *First National Bank of Boston,* 246 Mass. 324, 333, 334. *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246,

251. *Allen·* v. *Williams Motor Sales Co.* 277 Mass. 295. *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434, 440. *Steele* v. *Drummond,* 275 U. S. 199, 204, 205. *Twin City Pipe Line Co.* v. *Harding Glass Co.* 283 U. S. 353.

*Order overruling demurrer affirmed.*