JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, Plaintiff,

v.

The NEW YORK CENTRAL RAILROAD
COMPANY, Defendant.

Civ. A. No. 62-938.

United States District Court
D. Massachusetts.

July 10, 1963.

Edward B. Hanify, Ropes & Gray, Boston, Mass., for plaintiff.

Timothy H. Donohue, Sherburne, Powers & Needham, and Richard J. Ferriter, Boston, Mass., for defendant.

CAFFREY, District Judge.

Plaintiff, John Hancock Mutual Life Insurance Company, a Massachusetts corporation, has moved for summary judgment against defendant, New York Central Railroad Company, a Delaware corporation, in the amount of $1,865,065.92 with interest. Plaintiff is the holder of a Mortgage Note, executed December 9, 1952, by the Boston Terminal Corporation (Terminal), owner and operator of the so-called South Station in Boston. Terminal issued the note in connection with the consummation of a plan of reorganization of the Boston Terminal Company (old Terminal). The reorganization plan looked to continued operation of terminal facilities at the South Station which were, and are, used exclusively by the New York, New Haven and Hartford Railroad Company (New Haven) and the defendant.

Briefly stated, the reorganization plan provided that New Haven and the defendant would organize Terminal and acquire all of its stock for $1.00 per share. New Haven acquired 7 shares and the defendant 3 shares. Terminal operated

the South Station, and Terminal, New Haven and defendant entered into a new agreement for the operation of Terminal's business. Creditors of old Terminal were to receive payment for their claims as provided in the plan. The issuance of the note in question was one of the conditions to the consummation of the plan. It was issued to raise $3,500,000 in cash to comply with a requirement of the plan that the New Haven and the defendant "pay to the debtor's mortgage trustee $9,765,000 in cash (of this amount the railroad companies will cause the reorganized company to pay $3,-500,000)."

Prior to the consummation of the plan a purchase agreement was entered into between plaintiff and Terminal on November 18, 1952, under which plaintiff's obligation to purchase and pay for the note was subject to the prior execution and delivery of the "Operating Agreement" and the "Consent," delivery of signed copies thereof to the plaintiff, delivery of the note and the mortgage, and the recording of the mortgage. The assignment to plaintiff of Terminal's right to receive advances to pay the note under paragraph 6(b) of the Operating Agreement and the execution of the Consent were made express conditions to plaintiff's obligation to purchase the note.

The purchase agreement provided that prior to purchasing the note plaintiff was to receive certified copies of appropriate resolutions of the Board of Directors of the defendant with respect to the transaction, and in accordance with this requirement plaintiff received certified copies of resolutions adopted by defendant's Board of Directors on June 11, 1952 and November 12, 1952.

The June 11, 1952 resolution provided in part as follows:

"RESOLVED: That the President or any Vice-President of this company be, and hereby is, authorized to arrange for the acquisition by this company of 3 shares (being 30%) of the capital stock of the proposed new corporation to be known as The Boston Terminal Corporation; and for and in the name of this company and under its corporate seal (which may be attested by its Secretary or any Assistant Secretary), if required or appropriate, to execute and deliver:

"(a) An operating agreement among The Boston Terminal Corporation, The New York, New Haven and Hartford Railroad Company and this Company providing for the operation and maintenance of the facilities of said Terminal Corporation; and

"(b) A guaranty (including a guaranty agreement if deemed advisable) in whatever form may be required or appropriate in order to provide for the joint and several unconditional guaranty by the said The New York, New Haven and Hartford Railroad Company and this Company of $3,500,000 principal amount of bonds or notes proposed to be issued by said Terminal Corporation under its proposed mortgage bearing such rate of interest and having such maturity date as may be approved by the executive officer of this Company executing such guaranty;

such operating agreement and guaranty agreement to be in such form and to contain such provisions as may be approved by the President or Vice-President of this Company executing the same, respectively, such approval to be evidenced by such execution."

The November 12, 1952 resolution provided in part as follows:

"FURTHER RESOLVED: That the President and any Vice-President of this company be and they hereby are, and any of them acting alone hereby is, authorized, in its name and behalf, to enter into an Operating Agreement with the Boston Terminal Corporation and The New York, New Haven and Hartford Railroad Company with respect to the terminal known as South Station in Boston, Massachusetts, substan-

tially in the form presented to this meeting, to sign and deliver the same in several counterparts; and that the signature of said officer to any such counterpart be conclusive evidence that the same is authorized by this resolution.

"FURTHER RESOLVED: That the President and any Vice-President of this company be and they hereby are, and any of them acting alone hereby is, authorized, in its name and behalf, to sign, seal with the corporate seal of this company and deliver in several counterparts, an agreement by this company, entitled 'Consent,' substantially in the form presented to this meeting, consenting to the assignment, in a proposed First Mortgage Deed of The Boston Terminal Corporation securing its $3,500,000 Note, of its right to receive certain advances from this company payable under the Operating Agreement authorized at this meeting, and agreeing to pay directly to the mortgagee under said First Mortgage Deed the advances covered by said assignment and certain other payments in event of default under said Mortgage; that the signature of said officer to any such counterpart be conclusive evidence that the same is authorized by this resolution; and that the Secretary and the Assistant Secretary of this company be and they hereby are, and each of them acting alone hereby is, authorized to attest the corporate seal of this company so affixed."

Prior to plaintiff's purchase of the note the Interstate Commerce Commission and the Massachusetts Department of Public Utilities issued orders granting approval of the issue of the note, the assumption of Terminal's obligations under the note as provided in paragraph 6(b) of the Operating Agreement by New Haven and defendant, and approving assignment by Terminal of its rights under paragraph 6(b).

On December 9, 1952, plaintiff purchased the note. At about the same time that the note and mortgage were executed and delivered to plaintiff, the Operating Agreement and Consent were executed and signed copies thereof were delivered to plaintiff. The note in question was executed in the principal amount of $3,500,000, interest being payable in equal monthly installments of $21,000. The note is secured by the mortgage and provides that in case an event of default as defined in the mortgage occurs, the holder may declare the unpaid principal due and payable. Section 3.01(d) of the mortgage provides in part that an event of default shall occur

"if the Company (Terminal) or both the New Haven and the New York Central * * * shall file a petition * * * seeking reorganization * * * under the Federal bankruptcy laws or any other applicable law or statute of the United States of America * * *"

Section 3.02(a) of the mortgage provides that if an event of default shall have occurred and be continuing

"The Mortgagee, by written notice to the Company, may declare the unpaid principal of the note, if not already due, to be forthwith due and payable, and thereupon the same shall become forthwith due and payable * * *"

It is undisputed that on September 7, 1962, the Terminal filed a petition to effect a plan of reorganization under the bankruptcy laws of the United States in the United States District Court for the District of Connecticut, and I find and rule that this constitutes a default under Section 3.01(d) of the mortgage. It is likewise undisputed and I find that on September 11, 1962, plaintiff, by letter to Terminal with copy to defendant and to the trustees of New Haven, properly utilized the acceleration clause contained in Section 3.02(a) of the mortgage and accelerated and made forthwith due and payable the unpaid principal of the note. It is also undisputed and I find and rule that defendant has not paid the unpaid principal of the note plus interest due thereon.

■ I rule that defendant is under an unqualified legal obligation to pay this note as a result of the provisions of paragraph 6(b) of the Operating Agreement, which provides in pertinent part:

"(b) In consideration of the Terminal Co.'s entering into this agreement on the terms and conditions herein set forth,

"(i) The New Haven shall advance to the Terminal Co. 70 percent., and the New York Central shall advance to the Terminal Co. 30 percent., of the amounts, to the extent not otherwise paid by the Terminal Co., from time to time required to be paid by the Terminal Co. according to the provisions of its Mortgage Note dated December 9, 1952 for $3,500,000 and of the First Mortgage Deed, dated December 9, 1952 securing said Note, when due (by the terms thereof, on acceleration or otherwise), on account of all principal of, interest on and premium, if any, on said Mortgage Note; and

"(ii) If and to the extent that the New Haven or the New York Central shall at any time default with respect to any advance which it is obligated to make under clause (i) of this sub-paragraph 6(b), the other of them shall promptly advance to the Terminal Co. an additional amount equal to the amount of such default. Advances by one Railroad Company by reason of any such default by the other shall not excuse the other from its obligation to the Terminal Co. under this agreement to make the advance with respect to which it has so defaulted. Sums so advanced by either of said Railroad Companies under this clause (ii) of sub-paragraph 6(b) shall be subject to the terms provided under sub-paragraph 6(c) for other advances under this paragraph 6, except that they shall be repaid by the Terminal Co. before any repayment of advances made under sub-

paragraph 6(a) or clause (i) of sub-paragraph 6(b)."

The Consent, which is appended as Exhibit D to plaintiff's complaint, provides in material part that New Haven and defendant

"hereby acknowledge receipt of notice of the assignment contained in the granting clause of the First Mortgage Deed dated December 9, 1952, by and between the Boston Terminal Corporation (the "Company") and John Hancock Mutual Life Insurance Company, as Mortgagee, of the Company's rights under the Operating Agreement dated December 9, 1952, between the Company, the New Haven and the New York Central, and hereby consent to the assignment referred to above.

"The Company hereby irrevocably directs the New Haven and the New York Central to pay directly to the Mortgagee * * *

"(i) all advances payable to the company pursuant to sub-paragraph 6(b) of said Operating Agreement, and

"(ii) all other payments or advances payable to the Company pursuant to said Operating Agreement which may become payable in the event of default under the provisions of said First Mortgage Deed, to said Mortgagee;

and the New Haven and the New York Central severally agree with the Company to carry out the foregoing direction * * * *"

■ I find that upon the basis of the above-recited facts, all of which are established by the documents filed in support of the motion for summary judgment, there is no issue of material fact pending in the present posture of this case, and I rule that the "legal defenses" relied upon by defendant are so lacking in legal merit as not to warrant extended discussion thereof. For example, defendant's second defense, that the institution of reorganization proceedings by

Terminal and New Haven prior to plaintiff's accelerating the due date of the unpaid balance of the note relieved defendant of its obligations under the Operating Agreement, is not valid. It was obviously the intent of the parties to make acceleration available if a financial calamity of the type which has occurred did occur. See In re Utilities Power & Light Corp., (7 Cir.), 91 F.2d 598, cert. den. 302 U.S. 742, 58 S.Ct. 144, 82 L.Ed. 573, and Guaranty Trust Co. of New York v. Henwood, (8 Cir.), 86 F.2d 347, 108 A.L.R. 1020, cert. den. 300 U.S. 661, 57 S.Ct. 492, 81 L.Ed. 870.

■ Defendant's third defense is that the Consent was a gratuitous undertaking and is therefore unenforceable. The record indicates, on the contrary, that delivery of an executed copy of the Consent to the plaintiff was one of the conditions of plaintiff's purchase of the note, and even were this not so the Consent would be enforceable under Massachusetts law as a sealed instrument without other evidence of consideration. See Royal Bank of Liverpool v. Grand Junction Railroad & Depot Co., 100 Mass. 444, 445; Hayden v. Beane, 293 Mass. 347, 350, 199 N.E. 755; Lawrence H. Oppenheim Co. v. Bloom, 325 Mass. 301, 302, 90 N.E.2d 7; and Morad v. Silva, 331 Mass. 94, 98, 117 N.E.2d 290.

■ Defendant's fourth defense challenges plaintiff's standing to enforce defendant's obligations to Terminal. It is too late in the day to argue that in Massachusetts an assignee may not sue in his own name. See Reed v. Paul, 131 Mass. 129, 132; Mass.Gen.Laws, c. 231, sec. 5; and Wood v. Farmer, 200 Mass. 209, 86 N.E. 297.

Suffice it to say, with regard to defendant's fifth and sixth defenses, that the intent of the parties, and the terms of the Operating Agreement coupled with the circumstances of its execution, clearly indicate the provisions of paragraph 6(b) to be independent of other provisions of the Operating Agreement, and defendant's obligations under this paragraph were not intended to be and are not dependent upon performance by Terminal of any other provisions of the Operating Agreement.

Judgment for the plaintiff in the amount of $1,865,065.92, with interest in the amount of $479.22 for the two days September 10 and 11, 1962, and with interest on the said $1,865,065.92 at the rate of $310.844 (6% per annum) for each day from and after September 11, 1962 to and including this date.